**WIRE PROPERTIES, INC., Petitioner,**

v.

**DISTRICT OF COLUMBIA RENTAL HOUSING COMMISSION, et al., Respondents.**

**No. 82–422.**

District of Columbia Court of Appeals.

Argued Jan. 24, 1984.

Decided May 17, 1984.

---

Patrick W. Furey, Chevy Chase, Md., with whom Jeff Evan Lowinger, Chevy Chase, Md., was on the brief, for petitioner.

Gary S. Freeman, Asst. Corporation Counsel, Washington, D.C., with whom Inez Smith Reid, Acting Corporation Counsel and Charles L. Reischel, Deputy Corporation Counsel, Washington, D.C., were on the brief for respondents. Diana M. Savit, Asst. Corporation Counsel, Washington, D.C., also entered an appearance for respondents.

Before MACK and BELSON, Associate Judges, and REILLY, Chief Judge, Retired.

PER CURIAM:

Petitioner seeks review of an order of the District of Columbia Rental Housing Commission (Commission) dated April 7, 1982, affirming a District of Columbia Rent Administrator's adjustments and disallowances of certain claimed operating expenses offered by petitioner in support of its hardship petition. We affirm in part and reverse and remand in part.

The petition in question was filed pursuant to D.C.Code §§ 45–1517(c), –1523 (1981), and requested a 34% upward adjustment of the rent ceilings at petitioner's apartment complex, Carver Terrace. This kind of petition permits the Rent Administrator to allow an increase in rents such that the landlord receives a 10% rate of return on equity as calculated according to D.C.Code § 45–1523(b).[1] After reviewing an audit of the property's financial data and holding an evidentiary hearing, the Rent Administrator disallowed and/or adjusted, relevant to this appeal, claimed operating costs for management fees, supplies, water and sewer service, payroll, insurance, and uncollected rents. As a result of the Rent Administrator's decision regarding the expense data offered by petitioner, the rent ceiling adjustment for Carver Terrace was reduced from the requested 34% to 20.9%. The Commission affirmed the Rent Administrator's decision with respect to the specific categories of expenses and losses mentioned above. This appeal followed.

Petitioner alleges five errors in the administrative proceedings to date. It claims that (1) the Commission's decision regarding management fees was arbitrary, capricious, and not supported by substantial evidence in the record; (2) the Commission erred as a matter of law when it ruled that petitioner's costs for "supplies" had to be amortized as capital expenditures, rather than deducted as routine operating expenses; (3) the Commission acted arbitrarily and capriciously when it denied petitioner's costs for water and sewer service as incurred outside the reporting period; (4) the Commission erred as a matter of law when it required petitioner to prorate annual payroll and insurance expenditures, even though petitioner operated on the cash basis method of accounting and the expenses were paid within the reporting period; and (5) the Commission's denial of petitioner's claimed losses from uncollected rents was unsupported by evidence in the record. We

---

**1.** D.C.Code § 45–1523(b) (1981) sets forth the formula to be used in determining the rent adjustment necessary to permit a landlord to receive an allowable rate of return. The rate of return generated by a given rent level is calculated by dividing a landlord's net income, computed over a base period of twelve consecutive months within fifteen months preceding the filing of the petition, by the landlord's equity in the property. The net income is derived by subtracting operating expenses, management fees, property taxes, depreciation expenses, vacancy losses, uncollected rents, and interest payments, from the landlord's maximum rental income and other income from the property.

affirm the Commission's rulings regarding petitioner's claimed expenses for management fees, so-called supplies, and water and sewer service. The Commission's rulings requiring petitioner to prorate payroll and insurance expenses and disallowing claimed losses for uncollected rents are reversed and remanded to the Commission for further consideration.

## I

■ Where an election has been made pursuant to D.C.Code § 45–1517(c) (1981) to seek a rent adjustment through a hardship petition, the proponent of the petition bears the burden of proof. *Id.* § 1–1509(b). The petitioner must produce the quantum of evidence necessary to establish that the expense data cited in its petition is accurate. *Chapin Street Joint Venture v. District of Columbia Rental Housing Commission,* 466 A.2d 414, 415 (D.C.1983) (per curiam). It is the function of the administrative factfinder to evaluate the evidence and determine whether it is sufficient to support the proponent's position. "The administrative factfinder's decision upon such evidence will be upheld unless it is irrational or an abuse of discretion." *Id.* (citing *D.C. Transit System, Inc. v. WMATA,* 151 U.S.App.D.C. 223, 243, 466 F.2d 394, 414 (1972)). We conclude that the Commission's rulings with respect to the management fees, supplies, and water and sewer service were neither irrational nor an abuse of discretion.

■ On the issue of management fees, the Commission disallowed a claim for $161,846. Petitioner would have us remand this issue to the Rent Administrator so as to allow petitioner another opportunity to satisfy the Rent Administrator's inquiry into the accuracy of the claimed expense. Having reviewed the record, it appears that petitioner has suffered the consequences for its failure to adhere to the common principle embodied in the age old adage: "Opportunity only knocks once." The Commission concluded, and rightfully so, that petitioner had its opportunity at the hearing before the Rent Administrator to provide sufficient documentation to support its claimed management fee. Having failed to provide the Rent Administrator with substantive financial records concerning its expenditures in connection with managing Carver Terrace when given the opportunity, we believe it was eminently reasonable for the Commission to deny petitioner's request for a remand on this issue.[2]

■ On the issue of supplies, the Commission ruled that petitioner's costs for supplies had to be treated as capital expenditures, rather than as routine operating expenses. Petitioner claimed a supply expenditure of $234,982. This expense item included the costs for a new boiler, refrigerators, ranges, sinks, and cabinets installed during the reporting period. Petitioner contends that these expenditures merely maintained Carver Terrace in an efficient operating condition. We disagree. The record is consistent with the finding that the substantial replacements made by petitioner resulted in an increase in the value of Carver Terrace and appreciably prolonged its useful life. *See, e.g., Stewart Supply Co. v. Commissioner,* 324 F.2d 233

2. At oral argument, counsel for petitioner claimed that records supporting the management fee do exist, and that they were made available to the Rent Administrator. Our review of the record, however, reveals only a memorandum explaining how the management fee was computed; it does not contain any independently verifiable documents concerning petitioner's Carver Terrace management expenses.

Alternatively, petitioner argues that a remand is warranted because it was not advised by the Rent Administrator of her inability to verify the claimed management fee. Petitioner's argument is unpersuasive both in law and fact. As we have noted, the regulations give notice of the heavy burden placed on landlords to provide adequate documentation to support their hardship petitions. Moreover, in the present case the Rent Administrator made two separate requests for additional information to move the verification process along. Despite these specific requests for substantive evidence, the record is devoid of any reliable documentation concerning the property management costs.

(2d Cir.1963) (per curiam). Accordingly, we affirm the Commission's ruling that these supply expenditures constituted replacement costs and as such must be amortized over their useful life.

■ Regarding the issue of water and sewer service, the Commission disallowed $85,817 of petitioner's claimed expenses for water and sewage use because they were incurred outside of the reporting period. Petitioner claims it submitted bills for past usage because it had not received service bills for the reporting period at the time it filed its hardship petition. Petitioner asserts that it submitted these expenditures for past usage merely as estimates for the costs it incurred during the reporting period.[3] Because it was incurring expenses associated with water and sewer service throughout the reporting period, petitioner contends it was entitled to estimate these costs and include them in its hardship petition. We disagree.

■ According to Proposed Regulations of the Rental Housing Commission,[4] a landlord may elect to use either the accrual or the cash basis method of accounting when he files a hardship petition.[5] In the present case, it was uncontested that petitioner operated under the cash basis method of accounting. At the time petitioner filed its hardship petition, the Commission's proposed regulation § 218.11(a) provided that the Rent Administrator shall exclude "[a]ny expense that was accrued or paid outside of the twelve (12) month period."

28 D.C.Reg. 2060–61 (1981).[6] Thus, the Rent Administrator's focus upon reviewing a landlord's claimed operating expenses depends upon which method of accounting the landlord has elected. Because petitioner opted for the cash basis method in the present case, the operative term in § 218.11(a) is the word "paid" as opposed to "accrued." Accordingly, it appears that the Rent Administrator erred in disallowing petitioner's expenses on the basis of when they were incurred rather than when they were paid. Nevertheless, we uphold the Commission's disallowance of petitioner's claimed water and sewage costs.

Petitioner concedes in its brief that "[u]nder the cash basis method of accounting, only those ... expense items actually ... paid during the reporting period may be included in the petition; Provided that expenses reported shall not exceed expenses for more than a twelve (12) month period." Petitioner's brief at 5 (quoting § 3509.16 of the Rental Housing Commission's new proposed regulations, 30 D.C. Reg. 1515 (1983)). Petitioner also concedes that it was under the cash basis method and that none of its claimed expenses for water and sewer service were paid within the reporting period. Under these circumstances, the Commission's disallowance of petitioner's claimed water and sewer service costs was entirely proper.

## II

■ The same reasoning employed to affirm the Commission's disallowance of

---

3. Petitioner made this assertion for the first time in its appeal to the Commission from the Rent Administrator's final decision.

4. Proposed Regulations of the District of Columbia Rental Housing Commission, 28 D.C.Reg. 2044 (May 8, 1981). These were the proposed rules at the time petitioner filed its hardship petition. They were not enacted as final rules, but were superseded by new proposed rules. See 30 D.C.Reg. 1493 (April 1, 1983). The new proposed rules are substantially the same as the earlier proposed rules, insofar as they concern this opinion.

5. 28 D.C.Reg. 2060 § 218.9 (1981) (superseded by 30 D.C.Reg. 1515 § 3509.12 (1983)).

6. Section 3509.18(a) (1983) of the new proposed regulations contains the identical language. See 30 D.C.Reg. 1516 (1983).

Read literally, this provision would require exclusion of both expenses accrued outside the period and expenses paid outside the period. When read together with the proposed regulation allowing landlords an option of accounting methods, however, it seems apparent that the intent is to require exclusion of expenses *accrued* outside the period for landlords using the accrual method and exclusion of expenses *paid* outside the period for landlords using the cash basis method.

petitioner's claimed water and sewage costs requires reversal of the Commission's ruling on petitioner's payroll and insurance expenditures. The Commission disallowed a portion of payroll and insurance expenses claimed by petitioner, even though they were paid within the reporting period, because they did not benefit the reporting period. We reverse this ruling of the Commission and remand for verification of these expenses.

Petitioner's pension plan was a prepaid item covering a twelve month period, of which four months fell within the reporting period. Similarly, petitioner's insurance was a prepaid item covering a twelve month period, of which nine months fell within the reporting period. The Commission required petitioner to prorate these annual expenditures so as to exclude the portion of payments not benefitting the reporting period. In so doing, the Commission once again improperly focused upon when petitioner's expenses were incurred, rather than when they were paid. However, unlike petitioner's water and sewage costs which were paid outside of the reporting period, petitioner's annual pension plan

and insurance payments were prepaid within the chosen reporting period. Accordingly, these expense items should have been included in the hardship petition. We therefore reverse this aspect of respondent's decision and remand for reconsideration of these expenses.[7]

■ Finally, with respect to the issue of lost income from uncollected rents, the Commission disallowed petitioner's claim of $48,592 because it concluded that petitioner failed to provide verification of the claimed loss. Our review of the record, however, reveals detailed records for Carver Terrace which appear to establish the amount of income lost because of uncollected rents.[8] Because the Commission's decision is unsupported by the documentation made available to the Rent Administrator, we reverse this aspect of respondent's decision and remand for ascertainment of petitioner's losses due to uncollected rents. *See* D.C.Code § 1–1510(a)(3)(E) (1981).

*Affirmed in part and reversed and remanded in part consistent with this opinion.*

---

7. Respondent argues that if expenditures during a reporting period are allowed regardless of when the costs are incurred, landlords will manipulate the hardship petition process by front-loading expenses into the reporting period, thereby obtaining an artificially inflated rent adjustment. We find this argument unpersuasive given the extent to which a landlord is restricted from shifting expenses into the reporting period. Section 3509.16 of the Rental Housing Commission's new proposed regulations provides that "... expenses reported shall not exceed expenses for more than a twelve (12) month period." 30 D.C.Reg. 1515 (1983). Thus, a landlord filing a hardship petition under the cash basis method of accounting cannot report all expenses paid within the reporting period irrespective of when they accrued. The proposed regulation requires that expenses be paid during the reporting period and be for a twelve month period or less. It does not require that the expenses reported be for the same twelve-month period as the reporting period. Such a requirement would be inconsistent with the purpose of D.C.Code § 45–1523 (1981), which is to determine a landlord's rate of return computed over a twelve month period of average or typical income and expenses.

8. The documents submitted by petitioner in support of its claimed losses due to uncollected rents disclose the following recordkeeping system: petitioner maintains a separate ledger for each apartment for Carver Terrace. For a vacant apartment, the petitioner notes the date it was vacated, its monthly rental, and the date it was re-rented. Upon the re-renting of the apartment, petitioner calculates how much income was lost, if any, between the last rental payment (noted in the "Date Paid Thru" ledger) and the day the new tenant takes possession. The amount of lost income due to the vacancy is noted in the "Loss" ledger. If the previous tenant had failed to pay rent prior to vacating the apartment, the amount of lost income due to the uncollected rent is combined with the vacancy loss in the same "Loss" ledger. Thus, one ledger reflects losses attributable to both vacancies and uncollected rents. On a separate document, petitioner proportions the recorded losses between uncollected rents and vacancy losses. Upon review of the detailed ledgers and other supporting documents in the record, it is clear that petitioner's breakdown of the combined "Loss" ledger into the categories of uncollected rents and vacancy losses is verifiable.