JEROME MANAGEMENT, INC., Petitioner,

v.

DISTRICT OF COLUMBIA RENTAL HOUSING COMMISSION, Respondent.

Lydia A. WALKER, Petitioner,

v.

DISTRICT OF COLUMBIA RENTAL HOUSING COMMISSION, Respondent.

Nos. 93–AA–1432, 93–AA–1475.

District of Columbia Court of Appeals.

Argued March 15, 1995.

Decided Aug. 22, 1996.

---

Robert W. Gildar, Bethesda, MD, with whom Brian D. Riger was on the brief, for petitioner Jerome Management, Inc.

Edward G. Allen, with whom Victoria L. Lucchesi, Arlington, VA, and Suzanne Frare, Brooklyn, NY, were on the brief, for petitioner Lydia A. Walker.

Vanessa Ruiz, Corporation Counsel at the time the brief was filed, Washington, DC, and Charles L. Reischel, Deputy Corporation Counsel, filed a statement in lieu of brief, for respondent.

Before WAGNER, Chief Judge, and TERRY and STEADMAN, Associate Judges.

WAGNER, Chief Judge.

Jerome Management, Inc. (Jerome) challenges decisions and orders of the District of Columbia Rental Housing Commission (the Commission) holding that its tenant, Lydia Walker, was not bound by certain terms of a voluntary settlement agreement, upholding the award of rent refunds for overcharges to Walker, and dismissing Jerome's hardship petition in a separate proceeding after the administrative agency lost documents which Jerome submitted in support of its claim at a contested hearing. Jerome also argues that, assuming Walker is entitled to a refund, no interest should be awarded for any period later than the hearing examiner's decision. Walker also filed a petition for review of the Commission's decision denying her treble damages, attorney's fees, and a higher rate of interest on the monetary award. We hold that it is not unreasonable or inconsistent with the statute the Commission administers to allow a tenant, without notice of the voluntary agreement, to challenge that portion which purported to relinquish her individual claim and set rents retrospectively. We reject the remaining challenges to the Commission's determination of interest and the denial of Walker's claim for treble damages and attorney's fees.

## I.

This case has a long history. On November 5, 1982, Jerome filed with the District of Columbia Department of Consumer and Regulatory Affairs (DCRA), Rental Accommodations Office (RAO), a hardship petition (No. 10,327) seeking a 179% increase in the rent ceiling levels of all tenants in its apartment building located at 912½ Shepherd Street, N.W. where Mrs. Walker resided. A hearing was held on November 30, 1982. On March 1, 1983, Jerome implemented a provisional rent increase of 144%, as allowed under the Rental Housing Act of 1980, D.C.Code § 45–1623(c) (1991), because the agency had failed to render a decision within 90 days after the petition was filed.[1] On February 7, 1984, the RAO issued a final decision on Jerome's hardship petition in which it granted an increase in rent of 88% of the rent in effect at the time the petition was filed, ordered a refund of rent collected in excess of that amount, and required that 30 days notice be given before the increase became effective. Both parties appealed the decision.

On April 16, 1984, the Commission reversed the February 7, 1984 decision and remanded the hardship petition to the RAO for a *de novo* hearing. Jerome continued to charge and collect rent based upon the provisional increase of 144%. Pending the remand, Jerome negotiated with five of its seven tenants a voluntary agreement, which was approved by the Rent Administrator on September 26, 1984. The agreement included provisions that Jerome would withdraw its hardship petition provided that the rent remained at the level of the provisional increase of 144% and that the tenants waived any rent overcharges resulting from the provisional increase. The requisite number of tenants, more than 70%, approved the agreement, and the Rent Administrator approved it on September 26, 1984.[2] Jerome implemented the voluntary agreement for all units on November 1, 1984.

In April, 1985, Ms. Walker filed a tenant petition (No. 12,089) challenging the validity of the voluntary agreement. She contended that Jerome had increased the rent higher than allowed by the Act and the rent ceiling.

---

1. D.C.Code § 45–1623(c) provided in pertinent part as follows:

 If the Rent Administrator or his or her designee does not render a final decision within ninety (90) days from the date the petition is filed and the landlord is not in default in complying with any information request made under section 214(c), the rent ceiling adjustment requested in the petition may be conditionally implemented by the landlord. Such conditional rent ceiling adjustment shall be subject to subsequent modification by the final decision of the Rent Administrator or his or her designee on the petition....

2. At the time relevant to the voluntary agreement, D.C.Code § 45–1626 (1981) allowed rents for all units to be adjusted by a specified percentage if the landlord and 70% of the tenants signed a voluntary agreement to that effect.

She also contended that the voluntary agreement allowed Jerome to retain the benefit of the provisional increase and set rent levels retrospectively. The Rental Accommodations and Commission Division (RACD)[3] upheld the validity of the voluntary agreement and held that Walker failed to state a claim because she did not challenge the sufficiency of the number of signatures or the voluntariness of the agreement. Walker appealed the decision to the Commission which issued an order on October 23, 1986, reversing the RACD's decision, and directing a hearing on Walker's petition. The Commission also reopened the case involving Jerome's hardship petition to allow Walker to challenge the validity of the voluntary agreement because she had not been given notice and an opportunity to be heard.

The new hearing on the hardship petition was not held until almost five years later, on February 6, 1991. By that time, Jerome was unable to produce documentation in support of the petition because the agency had lost the documentary evidence which Jerome had submitted previously, and Jerome had no duplicates. Jerome argued that the agency had violated D.C.Code § 1–1501 *et seq.* because they had lost or misplaced the evidence. Walker argued for dismissal of Jerome's hardship petition because Jerome could not meet its burden of proof without the documents.

At the hearing on Walker's petition, she testified that she had been paying $123 per month until March 1, 1983, when Jerome increased her rent by 144% to $300 per month. According to Walker, she continued to pay this amount for nineteen months until September, 1984. She produced exhibits, including rent receipts, to support her claim for a refund of rent overcharges. She requested attorney's fees and treble damages, contending that Jerome knowingly demanded the unauthorized rent increase.

The Office of Adjudication (OAD) dismissed Jerome's hardship petition on January 4, 1993 because Jerome was unable to provide documentation in support of its claim. However, OAD specified that the dismissal was without prejudice because the

agency had lost the documents submitted earlier, and the lack of supporting documentation was "due to no fault of [Jerome]." OAD also determined that Walker was overcharged for 19 months, from the beginning of the provisional increase until the effective date of the voluntary agreement on September 24, 1984. Therefore, the hearing examiner granted Walker a refund of $3,632.00 plus interest at the rate of 8%. The hearing examiner also found that Walker failed to prove that Jerome acted in bad faith and declined to award treble damages or attorney's fees. Both parties appealed OAD's decision to the Commission.

On October 15, 1993, the Commission affirmed the dismissal of Jerome's hardship petition because neither RACD nor the Commission had any documents to review because the agency lost them. The Commission also dismissed the tenant's appeal due to the loss of documentary evidence, stating that "the Commission does not have an adequate record for review of the tenant petition in conformity with the requirements of D.C.Code § 1–1509(c)." However, the Commission observed that the decision and order of the hearing examiner remained in effect because the examiner had an evidentiary basis for it. The Commission also found that Walker should be refunded the amount of the overcharges, totalling $3,363.00 with interest at the rate of 8% accounting from March 1, 1983 (the date of the violation) until September 26, 1984 (the date that the voluntary agreement became effective). The Commission also awarded interest during the administrative delays at the fixed rate of 5% during the nine year period, amounting to $1,513.35, and upheld the hearing examiner's denial of attorney's fees and treble damages to Walker. Both Jerome and Walker filed petitions for review in this court.

## II.

Our role in reviewing agency decisions is a limited one. *See Oubre v. District of Columbia Dep't of Employment Servs.,* 630 A.2d 699, 702 (D.C.1993) (citations omitted). "We will not disturb the agency's deci-

---

**3.** The RACD is the successor to the RAO.

sion if it flows rationally from the facts which are supported by substantial evidence in the record." *Id.* (citations omitted); *see also* D.C.Code § 1–1510(a)(3)(E). With respect to questions of law, "we will uphold the agency's interpretation of the statute it is responsible for administering unless it is unreasonable in light of prevailing law, or conflicts with the statute's plain meaning or legislative history." *Id.* (citations omitted); *see also Davenport v. District of Columbia Rental Hous. Comm'n,* 579 A.2d 1155, 1157 (D.C. 1990). Where the agency's interpretation of a statute comports with that standard, we will sustain it even where a party advances another reasonable interpretation of the statute which this court might have accepted if construing the statute in the first instance. *Oubre,* 630 A.2d at 702 (citing *Smith v. District of Columbia Dep't of Employment Servs.,* 548 A.2d 95, 97 (D.C.1988)). However, if the agency's decision is based upon a material misconception of the law, this court will reject it. *Madison Hotel v. District of Columbia Dep't of Employment Servs.,* 512 A.2d 303, 306 (D.C.1986). "Subject to this deferential standard for matters of statutory interpretation, the reviewing court has the greater expertise when the agency's decision rests upon a question of law." *Oubre,* 630 A.2d at 702 (citing *Saah v. District of Columbia Bd. of Zoning Adjustment,* 433 A.2d 1114, 1116 (D.C.1981)). Applying these principles, we consider the parties' claims.

### III.

Jerome argues that under the Rental Housing Act of 1980, a voluntary settlement agreement approved by 70% of the tenants in a housing accommodation is binding in all respects on all tenants in the housing accommodation, including non-signatories such as Walker. Therefore, Jerome contends that the Commission erred in holding as a matter of law that the agreement was not enforceable against Walker and in allowing her to pursue a claim of rent overcharges in contravention of the waiver provision in the agreement.[4] While Jerome concedes that Walker

had a right to challenge the agreement, it contends that the grounds for challenge are limited to some impropriety, such as fraud, duress, misrepresentation, or coercion in the formation of the agreement, and that Walker made no such challenge. Therefore, Jerome argues, the Commission's failure to overturn its earlier decision, holding that the voluntary agreement bound Walker prospectively only for rent increases, was clearly erroneous and contrary to controlling law.

The provision of the Code then in effect, which is central to Jerome's position, is Section 216 of the Housing Act of 1980. D.C.Code § 45–1626 (1981). That section of the Code provides that:

> If seventy percent (70%) of the tenants of a housing accommodation sign an agreement filed with the Rent Administrator to have the rent ceiling for all rental units in the housing accommodation adjusted by a specified percentage, the Rent Administrator shall immediately certify approval of the increase.

Jerome contends that this statutory provision permits an agreement which not only sets prospective rent levels, but also adjusts rents retrospectively and compromises individual claims for overcharges, which may include those of any non-signatories. Unless an approved agreement is enforceable fully against all tenants, Jerome argues, it loses the benefit of its bargain for which it relinquished valuable rights. While Jerome's argument has some appeal, other considerations lead us to reject its challenge, at least on the particular facts of this case. Whether the adjustments in rent levels covered under § 45–1626 can be prospective only is not addressed specifically in the statute. Thus, there appears to be no prohibition in the statute foreclosing the interpretation which Jerome urges. However, as Walker points out, there also is nothing in the statutory language which precludes the agency from ruling as it did here. The Commission's ruling was a narrow one. It stated specifically that it was not holding "that an approved Voluntary

---

4. Essentially, Jerome argues that the Commission erred in declining to overturn its earlier decision before remand determining that the voluntary agreement did not bind Walker, a non-

signatory tenant, insofar as it purported to release her contested claim for past rent overcharges.

Agreement may never have retroactive application nor settle a pending dispute or contested case between a landlord and tenants." It held only that

the Agreement in this case—in which *none* of the tenant-signatories was a party to the contested case and *none* of the tenants in the contested case signed the Agreement—did not settle the pending claim of a non-signatory tenant or operate as an accord and satisfaction of the non-signatory tenant's contested case claims.

■ In addition, the Commission based its decision on the ground that Walker was not given notice and an opportunity to object to the proposed agreement as provided for in the agency's regulations, and therefore, she was not barred from challenging its validity subsequent to approval. Although the applicable regulations provided for approval of a voluntary agreement, without a hearing, based upon an investigation by agency staff, the Commission determined that the regulations, which were not followed here adequately, required notice to the tenant. In this connection, the Commission noted that the Voluntary Agreement file did not contain a copy of the "written notice" to the tenants as required by 14 DCMR 3512.3.[5] It further observed that even the standard form did not "provide notice that a dissenting tenant must file written objections within 14 days (14 DCMR 3512.5 and .6), or that a tenant may request a hearing on the Agreement (14 DCMR 3512.19)." Jerome has not challenged Walker's claim, or the Commission's determination that Walker was not notified of her right to challenge the voluntary agreement. Notice and an opportunity to be heard at a meaningful time are fundamental

elements of due process. *See Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S.Ct. 893, 901–02, 47 L.Ed.2d 18 (1976); *In re Richardson*, 481 A.2d 473, 481 (D.C.1984); *see also Davis v. University of the District of Columbia*, 603 A.2d 849, 853 (D.C.1992). The Commission's decision adheres to these basic principles and gives effect to its own regulations.

■ Jerome contends that the applicable statute requires enforcement of all of the provisions of the approved agreement. It contends that neither the statute nor regulations allow the Commission to hold some of the provisions unenforceable against non-signatory tenants. Although D.C.Code § 45–1626 (1981) provided a mechanism allowing a landlord and a 70% majority of tenants to enter an agreement adjusting rent levels for all units in the accommodation, it did not address whether such adjustments could include rents previously paid. Absent a statutory or regulatory prohibition,[6] we are not persuaded that the Commission's decision was plainly erroneous or unreasonable on the particular facts of this case. The equities strongly weigh against allowing signatory tenants to bind non-signatory tenants, without notice, to terms which waive the latter's personal claims for past overcharges.[7] The Commission's determination that a tenant who had not been provided with the requisite notice and an opportunity to object to a 70% voluntary agreement had a right to challenge that portion of the agreement purporting to relinquish the tenant's individual rights to a claim for rent overcharges is not unreasonable or contrary to the controlling statute; therefore, we will sustain it.[8] *See Davenport,*

5. This regulation provides that the landlord must distribute a copy of the agreement and "a written notice that describes in detail the proposed rent ceilings that would be established...." 14 DCMR § 3512.3 (1986).

6. Jerome contends that the regulations limit the grounds for challenging the agreement to improprieties, such as fraud, misrepresentation, and coercion. However, the regulations also provide for disapproval of the agreement if the agreement contradicts the statute "or results in an inequitable treatment of tenants." 14 DCMR § 3512.20. Therefore, we reject the argument.

7. *Cf. Davenport v. District of Columbia Rental Hous. Comm'n*, 579 A.2d 1155, 1157 (D.C.1990).

8. Jerome argues that the Commission should have addressed this issue again in its order of October 15, 1993. The matter was addressed fully in its 1986 order, and Jerome has shown no reason for the Commission to decide that issue anew. *See Lynn v. Lynn*, 617 A.2d 963, 972 (D.C.1992) (law of the case principles preclude second review by same tribunal unless required to meet goal of doing substantial justice); *see also Weinberg v. Johnson*, 518 A.2d 985, 987 (D.C.1986). In light of our disposition of the case, we need not address Jerome's claims that the Commission's decision was predicated upon

*supra* note 7, 579 A.2d at 1157; *Oubre, supra,* 630 A.2d at 702; *Smith, supra,* 548 A.2d at 97.

## IV.

■ Jerome argues that the Commission erred in upholding the dismissal of its hardship petition when it was unable to make a record at the hearing on remand. Jerome contends that the agency had a duty by law to maintain the records which it had submitted when it first submitted its petition, which remained in the Commission's custody. Unquestionably, the agency had an obligation to maintain the records in the case. D.C.Code § 1–1509(c) provides, in pertinent part, that

> the agency shall maintain an official record in each contested case, to include testimony and exhibits ... [which] together with all papers and requests filed in the proceeding ... shall constitute the exclusive record for order or decision. No sanction shall be imposed or rule or order or decision be issued except upon consideration of such exclusive record, or such lesser portions thereof as may be agreed upon by all the parties to such case.

When a hardship petition is filed, the housing provider must submit supporting documentation for claimed expenses and income. *See* 14 DCMR 4209.16. There was testimony at the hearing on the reinstated hardship petition that Jerome provided RACD with the only copies of its supporting documents at the time of the initial filing of the petition.[9] The hearing examiner acknowledged that the agency lost the documents. However, recognizing that the housing provider had the burden of proving expenses, the examiner concluded that the only "mitigation" which the examiner could provide was to reflect the dismissal of the petition without prejudice. The hearing examiner also reasoned that "participation in the rental housing market should dictate to a reasonable landlord that a back-up copy should be maintained by the

landlord." The Commission affirmed the examiner's decision.

A housing provider who seeks an adjustment in rent levels through a hardship petition has the burden of proof. *Wire Properties, Inc. v. District of Columbia Rental Hous. Comm'n,* 476 A.2d 679, 682 (D.C.1984)(citing D.C.Code § 1–1509(b)). "The [housing provider] must produce the quantum of evidence necessary to establish that the expense data cited in the petition is accurate." *Id.* (citations omitted). In this case, the housing provider could produce no evidence to meet that burden at the *de novo* hearing. Therefore, the hearing examiner had no basis upon which to determine whether Jerome's position was supported. *See id.* The only question is whether the Commission should have determined that Jerome was relieved of that burden by reason of the agency's loss of the documents. On this record, we can not conclude that the Commission erred in failing to rule that way.

The rights of both parties were at issue and had to be given consideration. The agency could not relieve Jerome of its burden of proof without placing upon Walker responsibility for rental charges to which Jerome had shown no entitlement in the proceeding in which Walker was a contesting party. While the agency's failure to maintain its records proved to be detrimental to Jerome's ability to meet its burden of proof, it does not dictate that Walker should bear the adverse consequences instead of Jerome. The record does not reflect that Jerome made any effort to reconstruct its records. As the hearing examiner observed, "participation in the rental housing market should dictate to a reasonable landlord that a back-up copy should be maintained by a landlord." Jerome has not shown that its burden of proof on the hardship petition should have been deemed established because the agency

the mistaken assumption that Jerome had little to lose by signing the Agreement and that the signatory tenants were affected only marginally by it. These factors did not affect the controlling considerations which guided the Commission's decision, and they do not form the basis for our disposition of the case.

9. Jerome withdrew its hardship petition when it settled the dispute with the other tenants under the voluntary agreement.

lost its documents.[10] Therefore, we find no error in the Commission's decision affirming the decision of the hearing examiner when Jerome could not meet its burden of proof.[11] *See Wire, supra,* 476 A.2d at 681.

## V.

██ Jerome argues that the Commission erred in awarding Walker interest on the refund awarded to and through the date of its decision and order. It contends that it would be inequitable to award interest for any period later than the date of the hearing examiner's decision, since the significant delay was the fault of the agency. Relying upon its prior decisions, the Commission held that interest should accrue on the refund until the date of the final decision. It cited *United States v. United Drill & Tool Corp.,* 87 U.S.App.D.C. 236, 237, 183 F.2d 998, 999 (D.C.Cir.1950) for the proposition that "if the obligation is in the nature of a debt it is deemed interest-bearing, because the statutory purpose was to create a debtor-creditor relationship and an equity interest is allowed as a means of compensating a creditor for loss of use of his money." The Commission noted that it held previously that a rent refund was in the nature of a debt and that interest should be applied. *See Hinton v. Moser,* TP 2774 (RHC Apr. 2, 1986); *Guerra v. Shannon & Luchs Co.,* TP 10,939 (Apr. 2, 1986). Citing *Hinton* and *Guerra,* this court has held that "interest should be awarded on the damages incurred from the time [an item in leased premises] became inoperable until the present, not just for the ... months during which the loss ... occurred." *Marshall v. District of Columbia Rental Hous. Comm'n.,* 533 A.2d 1271, 1278 (D.C.1987). The Commission's determination of the period of the interest is consistent with these precedents, and we find no basis to disturb it. The Commission's decision requires Jerome to pay interest for the period during which it had the use of Walker's funds and she was deprived of them. *See United Drill & Tool,*

*supra,* 183 F.2d at 999. Therefore, we see no inequity in the Commission's determination of the period of interest.

### *Lydia A. Walker v. District of Columbia Rental Housing Commission,* No. 93–AA–1475

#### 1. *Treble Damages*

██ In her petition for review, Walker argues that the Commission erred in affirming the hearing examiner's decision denying her treble damages because it is based upon an incorrect legal standard. The hearing examiner rejected the claim for treble damages because there was no showing that Jerome had acted in bad faith. The Commission affirmed the decision, adding that it would not award treble damages due to special circumstances, specifically the agency's loss of the records which Jerome contended supported his claim. Walker contends that the hearing examiner based his decision upon the standard found in a later Housing Act instead of the Housing Act of 1980, which is applicable to this case.

Under the Rental Housing Act of 1985, "any person who knowingly demands or receives rent for a rental unit in excess of the maximum allowable rent applicable to that rental unit ... shall be held liable ... for the amount by which the rent exceeds the applicable rent ceiling or for treble damages (in the event of bad faith)...." D.C.Code § 45–2591(a). Under the Rental Housing Act of 1980, "any person who knowingly demands or receives any rent for a rental unit in excess of the maximum allowable rent applicable to that rental unit shall be held liable ... for the amount by which the rent exceeds the applicable rent ceiling or for treble that amount...." D.C.Code § 45–1591 (1981). The difference between these provisions is that the more recent version includes parenthetically a bad faith requirement for an award of treble damages. Neither provision mandates an award of treble damages. Nor does the statute preclude the Commis-

---

**10.** Jerome states in its brief that "[i]f the dismissal stands, then Jerome has been denied his due process rights and would be severely prejudiced by virtue of violations of law by RAO, RACD and [the Commission]." Jerome makes no argument and cites no authority in support of this statement; therefore, we do not consider it.

**11.** Walker produced evidence at the hearing on remand of her tenant petition.

sion from concluding, in its discretion, that special circumstances may be such that treble damages are not warranted or that bad faith is an appropriate consideration under the Housing Act of 1980. The findings of the absence of bad faith and the presence of special circumstances warranting no treble damages award are supported by the record.[12] We find no abuse of discretion in the agency's determination that exceptional mitigating circumstances were present here which warranted no sanction of treble damages. *See McCulloch v. District of Columbia Rental Hous. Comm'n,* 584 A.2d 1244, 1251 (D.C.1991); *Boer v. District of Columbia Rental Hous. Comm'n,* 564 A.2d 54, 57 (D.C. 1989); *see also Mudd v. District of Columbia Rental Hous. Comm'n,* 546 A.2d 440 (D.C. 1988).

### 2. *Attorney's Fees*

Walker contends that the Commission abused its discretion in refusing to award her attorney's fees under D.C.Code § 45–2592. This section creates a "presumptive award of attorney's fees to the prevailing party— which may be withheld, in the court's discretion, if the equities indicate otherwise." *Ungar v. District of Columbia Rental Hous. Comm'n,* 535 A.2d 887, 892 (D.C.1987). The Commission determined that the equities weighed against an award of attorney's fees in this case.[13] We find no abuse of discretion in its decision. *See id.*

### 3. *Interest Rate*

 Finally, Walker argues that the Commission abused its discretion by applying a fixed rate of interest from the time the violation ceased until the date of the Commission's decision.[14] She contends that calculating interest rates at a fixed rate is contrary to the agency's regulations.

12. Jerome's rights during the period of the overcharges were uncertain much of the time, and they can never be ascertained primarily because the agency did not maintain its records.

13. The Commission stated as follows:
In this case, the Commission holds that the equities indicate that attorney fees should be withheld. This case was not reviewed on its merits, because the agency lost the documents

Under 14 DCMR 4217.3, the "Rent Administrator shall add simple interest at the rate prescribed for judgments and decrees by D.C.Code § 28–3302(c)." Under D.C.Code § 28–3302(c), the interest rate fluctuates unless good cause is shown. The Commission found good cause to apply a fixed rate due to the nine years of protracted administrative delay and since there was no evidence that either party was at fault. The record supports the Commission's decision. Therefore, we affirm it.

For the foregoing reasons, the decision of the Commission in the cases of both Jerome and Walker are hereby

*Affirmed.*

submitted by both parties. It would be unfair to award attorney fees under the circumstances, when the agency is unable to review either the hardship case or the tenant petition case due to its loss of the parties' records.

14. The Commission applied a fluctuating rate of interest for the period that the excessive rent was collected.