Robyn **KENNEDY**, et al., and Hampton House Tenants Association, Petitioners,

v.

**DISTRICT OF COLUMBIA RENTAL HOUSING COMMISSION,** Respondent.

**Ronald L. Shapiro, t/a Shapiro & Company, Intervenor Respondent.**

No. 96–AA–830.

District of Columbia Court of Appeals.

Argued Nov. 4, 1997.

Decided April 2, 1998.

---

Brian J.H. Lederer, Washington, DC, for petitioners.

Vincent Mark J. Policy, Washington, DC, for intervenor respondent.

Jo Anne Robinson, Interim Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, filed a statement in lieu of brief for respondent.

Before WAGNER, Chief Judge, and STEADMAN and REID, Associate Judges.

STEADMAN, Associate Judge:

This appeal involves the proper application of the statute of limitations to tenant challenges of rents charged by their landlords. More specifically, the question presented is whether tenants may challenge rent charges, where they are asserted to exceed the lawful rent ceiling based solely on a single improper ceiling adjustment made some eight years previously and, therefore, not itself subject to direct attack because of the three-year statute of limitations contained in the Rental Housing Act of 1985, D.C.Code § 45–2516(e) (1996). The Rental Housing Commission ("Commission" or "RHC") ruled that the tenants' challenge was time-barred by that provision. We affirm.

## I.

Petitioners are seventy-five tenants of the Hampton House Apartments, a ninety-seven unit residential apartment building located at 2700 Connecticut Avenue, N.W., and the Hampton House Tenants Association. On April 11, 1994, they filed a petition with the Rent Administrator[1] seeking refunds of excessive rents paid since April 11, 1991, with interest and treble damages, and a declaration of the lawful rent ceiling level. The petition alleged that the Hampton House landlord-intervenor, Ronald Shapiro, doing business as Shapiro & Company ("housing provider"), maintained unlawful rent ceiling levels and, in reliance on these ceilings, charged unlawfully inflated rents for the years 1991–1994. The petition attributed the improper ceilings exclusively to an erroneously computed June 30, 1986 rent ceiling adjustment which, because of the statutory method for the annual updating of rent ceilings, resulted in incorrect and unlawful rent ceilings for all subsequent years.[2] *See* D.C.Code § 45–2516(a), (b) (1996).

---

1. The Rental Housing Act confers primary jurisdiction over rent overcharge petitions upon the Rent Administrator, the designated head of the Rental Accommodations and Conversion Division (RACD). *See* D.C.Code §§ 45–2513(a), –2514(c), –2526(a) (1996); *Drayton v. Poretsky Management, Inc.*, 462 A.2d 1115, 1120 (D.C. 1983) (holding that Superior Court judge may not undertake to adjudicate the validity of a rent increase, but rather must stay any pending action to await the rulings of the Rent Administrator and, if appeals are taken, of the Commission and this court).

2. Petitioners asserted, "the record shows that the Housing Provider erred in the application of the consumer price index to produce the unlawful rent ceilings and rents," but acknowledged that he did so "at a time prior to April 11, 1991." They further stipulated, after the hearing examiner accepted the housing provider's statute of limitations argument, that "there were no violations of the [Rent Control] Act which may be challenged by a tenant petition for any rental units in the housing accommodation during the period April 11, 1991 through the date of the hearing."

The housing provider raised the statute of limitations defense under D.C.Code § 45–2516(e), pointing out that the only disputed rent ceiling adjustment, that of June 30, 1986, occurred more than three years before the petition's filing and was thus unassailable. Petitioners countered that § 45–2516(e) only served to limit their recovery to the excess rents paid over the three years preceding the petition. They characterized the petition simply as a challenge to patently unlawful rents and rent ceilings for the years 1991–1994, not to the propriety of the 1986 adjustment, which they conceded could not be litigated because of the statute of limitations.

The hearing examiner, reversing an earlier order, agreed with the housing provider that the statute of limitations barred the petition and dismissed it with prejudice. The Rental Housing Commission affirmed.

## II.

Until the adoption of the Rental Housing Act of 1985, the applicable statute of limitations to rent overcharge claims was the general three-year statute of limitations contained in D.C.Code § 12–301(8) (1995) as an action for which a limitation "is not otherwise specially prescribed." *Lustine v. Williams*, 68 A.2d 900, 902 (D.C.1949) (citing D.C.Code § 12–201 (1940), the predecessor to § 12–301). In *McCulloch v. District of Columbia Rental Accommodations Comm'n*, 449 A.2d 1072 (D.C.1982), applying that statute, we upheld a tenant petition alleging rent overcharge filed more than three years after the rent increase that triggered the cause of action. We stated, "with each rental payment that is illegally charged, a new cause of action will arise." *Id.* at 1073. The legacy of *McCulloch* was that "a petition claiming ille-

gal rents could be filed within three years of the last demand for the allegedly illegal rent, irrespective of when that rent was first implemented or demanded." *Sendar v. Burke*, HP 20,213 and TP 20,772 (RHC Apr. 6, 1988) at 21. Thus, prior to the 1985 Act, the tenants' position here would undoubtedly prevail.

The question then is whether the 1985 Rental Housing Act, which is applicable to the events before us, changed the law in that respect. We first briefly set forth the overall structure of the Act as relevant here. Section 206(a), codified as D.C.Code § 45–2516(a) (1996), establishes the concept of a "rent ceiling" as the sum of the "base rent"[3] and all duly authorized rent increases. *See also* D.C.Code § 45–2503(29) (1996) (identifying the term "rent ceiling" as the "amount defined in or computed under § 45–2516"); *Winchester Van Buren Tenants Ass'n v. District of Columbia Rental Hous. Comm'n*, 550 A.2d 51, 53 (D.C.1988). Specifically, the statute provides, "no housing provider of any rental unit subject to this chapter may charge or collect rent for the rental unit in excess of the amount computed by adding to the base rent not more than all rent increases authorized after April 30, 1985." D.C.Code § 45–2516(a). The housing provider may adjust the rent ceiling for a variety of reasons, including the annual "adjustment of general applicability" tied to changes in the Washington, D.C., Standard Metropolitan Statistical Area Consumer Price Index for Urban Wage Earners and Clerical Workers ("CPI–W"). D.C.Code § 45–2516(b). *See also* D.C.Code §§ 45–2517, –2520 to –2525 (1996).

As part of Section 206, the Act for the first time contained a statute of limitations provision specifically applicable to tenant chal-

---

The precise nature of the alleged error in 1986 was detailed in the tenant petition as follows: "The Housing Provider initially reported improperly high rent ceilings for a large number of rental units for the period immediately prior to June 1, 1986 when it filed its 'Certification of Election of Adjustment of General Applicability' on June 30, 1986.... These improperly reported rent ceilings appear to form the primary basis for the Housing Provider's calculations of adjusted rent ceilings for the years 1986, 1987, 1988, 1989, 1990, 1991, 1992 and 1993...."

3. Base rent is defined as

that rent legally charged or chargeable on April 30, 1985, for the rental unit which shall be the sum of rent charged on September 1, 1983, and all rent increases authorized for that rental unit by prior rent control laws or any administrative decision issued under those laws, and any rent increases authorized by a court of competent jurisdiction.

D.C.Code § 45–2503(4) (1996).

lenges. That subsection, pivotal for purposes of this appeal, reads as follows:

> A tenant may challenge a rent adjustment implemented under any section of this chapter by filing a petition with the Rent Administrator under § 45–2526. *No petition may be filed with respect to any rent adjustment, under any section of this chapter, more than 3 years after the effective date of the adjustment,* except that a tenant must challenge the new base rent as provided in § 45–2503(4) within 6 months from the date the housing provider files his base rent as required by this chapter.

D.C.Code § 45–2516(e) (emphasis added).

■ This provision, the Commission ruled, barred the tenants here from any relief. In doing so, it followed a long series of similar holdings interpreting § 45–2516(e) as amending the prior law. In effect, the interpretation bars any investigation of the validity of rent levels, or of adjustments in either the rent levels or rent ceilings, in place more than three years prior to the date of the filing of a tenant petition and thus treats them as unchallengeable.

### III.

■ A fundamental principle of administrative appeals, which we have often restated, is that " '[i]n reviewing the construction of a statute by the agency charged with its interpretation and enforcement, the agency's interpretation is controlling unless it is plainly erroneous or inconsistent with the statute.' " *Slaby v. District of Columbia Rental Hous. Comm'n,* 685 A.2d 1166, 1167 (D.C.1996) (quoting *Totz v. District of Columbia Rental Accommodations Comm'n,* 412 A.2d 44, 46 (D.C.1980) (per curiam)), *cert. denied,* —— U.S. ——, 117 S.Ct. 1478, 137 L.Ed.2d 690 (1997). *See also 1841 Columbia Rd. Tenants Ass'n v. District of Columbia Rental Hous. Comm'n,* 575 A.2d 306, 308 (D.C.1990); *Remin v. District of Columbia Rental Hous. Comm'n,* 471 A.2d 275, 279 (D.C.1984). We are particularly deferential to a consistent, well-established agency interpretation and may accept it notwithstanding the presence of other reasonable interpretations that this court might have embraced had it construed the statute in the first instance. *Jerome Management, Inc. v. District of Columbia Rental Hous. Comm'n,* 682 A.2d 178, 182 (D.C.1996). Both of these principles are controlling here.

### A.

In sustaining its position, the Commission cited a line of its decisions uniformly holding that the very purpose of the new statute of limitations provision in § 45–2516(e) was to overrule *McCulloch* and prohibit petitions against rent levels put in place more than three years prior to the petitions' filing. In *Chin Kim v. Woodley,* TP 23,260 (RHC Sept. 13, 1994),[4] the Commission read § 45–2516(e) to lessen the "administrative quagmire for both the agency and relevant parties" stemming from the need under *McCulloch,* in response to a tenant petition claiming illegal rent ceilings and rents, to conduct "a rent ceiling analysis of all prior years to arrive at the present ceiling." *Id.* at 10. "[T]he new statute avoided having to reanalyze every prior rent ceiling adjustment all the way back to the base rent each time an increase in the ceiling occurred." *Id.* at 10–11. This construction, the Commission concluded, flows from the plain language of the statute as informed by the legislative history which it quoted: " 'Provisions concerning the time for filing challenges to rent adjustments have been changed. Tenants must file any challenge to any type of rent adjustment within three years after the adjustment takes effect.' " *Id.* at 10 (quoting Statement of Councilmember Jarvis re: Amendment in the Nature of a Substitute to Bill 6–33, at

---

4. The *Chin Kim* tenant paid $350 in monthly rent between 1983 and 1987, whereupon the landlord increased it to $420. *See* TP 23,260 at 11. In 1993, the tenant filed a petition alleging, *inter alia,* the landlord collected rent that exceeded the lawful rent ceiling, which, by his calculation, was only $100 per month. *Id.* The Commission held, however, that since the tenant did not challenge the rent adjustments until 1993, six years after the rent rose to $420, "the tenant may not collect a refund for the rent overcharges, because the challenge to the rent increases had to be made no later than three years after their effective dates." *Id.*

11). *See also Sendar v. Burke,* HP 20,213 and TP 20,772 (RHC Apr. 6, 1988), at 20–21.

Another analogous decision relied upon by the Commission in the present case is *Williams v. Aubinoe,* TP 22,821 and TP 22,814 (RHC Aug. 12, 1992). In *Williams,* two tenants, Luevette Williams and Marian White, filed petitions in September 1991. *Id.* at 1–2. The petitions alleged illegal rent increases in 1986 and 1987, arising from an incorrect calculation of the 1985 base rent, causing illegal rent ceiling levels in all subsequent years. *Id.* at 2–3. On appeal to the Commission, they specifically asserted that "the rent charged exceeded the legally calculated rent ceiling for my/our unit(s)" and argued for a "rent rollback" to the 1985 base rent level. *Id.* at 1, 5. *See* 14 DCMR § 4217.1(c) (1991). The housing provider raised the statute of limitations defense under § 45–2516(e), to which the tenants responded, *inter alia,* "the statute of limitations should not bar their petition because the 1985 base rent used in calculating the increases taken in 1986 and 1987 have a domino effect upon subsequent increases." *Williams, supra,* TP 22,821 and TP 22,814, at 8.

The Commission sided with the housing provider and dismissed the tenant petition, stating:

> We appreciate the effect which an incorrect rent figure, used as the base rent in 1985, and subsequently used in 1986 and 1987 in calculating the rent increase, would have on all subsequent rent increases. However, the information on the RACD files was available to the public at all times during the statutory three (3) years for the tenants to file their claims. The tenants have offered no reason for their failure to file their claims during the three years.

*Id.* at 8–9.

In a third case, *Ayers v. Landow,* TP 21,273 (RHC Oct. 4, 1990), the Commission also interpreted § 45–2516(e) to limit a recalculation of rent ceilings, on a rent overcharge

petition, to three years prior to the petition's filing. In April 1988, the tenants filed a petition challenging, *inter alia,* the rent ceilings in effect throughout the period October 1, 1986 to April 1, 1988, during which the rent steadily rose from $280 to $400 per month. *Id.* at 18. The tenants claimed the rent ceiling should have remained fixed at $280 during the period in question because all attempts by the housing provider to raise it were, for various reasons, invalid; the housing provider initially placed the ceiling at $309 per month and argued it rose to $323 per month on March 19, 1987 when he filed a "Registration/Claim of Exemption" form. *Id.* at 15–16.

The Commission found that the $309 figure had been established on November 29, 1982, when the housing provider filed an "Amended Landlord Registration Form" adjusting the rent ceiling from a previous level. *Id.* at 18–19. Since the "adjustment occurred more than three years prior to the filing of the instant petition ... it [was] no longer subject to challenge" under § 45–2516(e). *Id.* at 19. Accordingly, the Commission recognized $309 as the rent ceiling in effect as of April 30, 1985. *Id.* (citing 14 DCMR § 4201 (1989)).[5]

### B.

The tenants argue on this appeal, as they did before the Commission, that § 45–2516(e) merely serves to limit their recovery of rent overcharges to the period 1991–1994. They press a distinction between a lawful "rent ceiling" and a "rent adjustment," and argue as follows: § 45–2516(a) determines the lawful rent ceiling by "adding to the base rent ... all rent increases authorized after April 30, 1985." A rent increase is accomplished, among other ways, by following certain statutory procedures such as, for CPI–W increases, filing a Certificate of Election of Adjustment of General Applicability. 14 DCMR § 4204.10 (1991). The tenants argue that "each and every time a landlord perfects and

---

5. For additional relevant Commission decisions, see *Emes v. Campbell,* TP 23,258 (RHC Oct. 23, 1996); *Jenkins v. Johnson,* TP 23,410 (RHC Jan. 4 1995); *Peerless Properties v. Hashim,* TP 21,159 (RHC Oct. 26, 1992) ("The three year statute of limitations contained in the 1985 Act is a bar to the filing of a claim and not simply a limitation on the period of time that a tenant could recover.").

takes a rent ceiling change, the landlord is recertifying that the new rent ceiling properly reflects the total of all authorized increases to the base rent. If the new rent ceiling listed on the rent change form incorrectly adds the authorized increases, any claim of a higher rent ceiling is unauthorized, and unlawful." This holds true, in the tenants' view, despite the fact that each individual rent ceiling adjustment was within proper legal limits except for a single remote adjustment, which created, by a domino effect, skewed ceilings for every subsequent year. They reiterate,

> [a]t each election of the general applicability increase ... the rent ceiling constitutes the conglomeration of all the percentage increases to the base rent taken and certified, no more or less. If the rent exceeds the rent ceiling, the statute of limitations limits the refund for excessive rents to three years back from the date of the claim, and to correct the rent level from that point forward.

In short, they assert, § 45–2516(e) applies to attacks upon rent adjustments, not rent ceilings.[6]

The Commission rejected this general line of argument. In response to the point that § 45–2516(e) omits the term "rent ceiling" and thus only applies to rent "adjustments," the Commission reasoned,

> new rent ceilings by themselves are not an adjustment in rent; however, after the rent ceilings are implemented on a specific effective date, the three year statute of limitations in the Act begins to run. The statute of limitations in the Act placed a limitation on the tenants' right to recover, as well as, the right to a remedy (refunds).

Nor are we persuaded by the semantic distinction between "rent ceilings" and "adjustments." Despite the technical difference between the two concepts, to evaluate the tenants' claims of rent overcharges between 1991–1994, one must necessarily calculate the lawful rent ceilings for those years, which, as

the tenants concede, involves a study of all previous ceiling levels dating back to the base rent in 1985. Ultimately, the validity of these ceilings depends on the propriety of the periodic adjustments taken by the landlord, a matter squarely within the purview of § 45–2516(e).

### C.

The tenants take great pains to emphasize the consequences, dire in their view, of an affirmance of the Commission's holding. They claim that if the statute of limitations bars their petition, then all prior rent ceilings and rent levels, however outlandish and violative of the rent control laws, are rendered valid.

This position is not without some force in the abstract. However, the contention that one may challenge a particular rent amount based on § 45–2516(a), not an adjustment which led to it, and therefore fall outside the reach of § 45–2516(e), strains the plain meaning of the statute and, in some sense, would render far less effective, if not nugatory, the enactment of § 45–2516(e). The propriety of a particular rent charged by a housing provider can only be judged against the allowable rent ceiling, a figure defined in terms of the sum of the base rent and all subsequent authorized adjustments. Rents and rent ceilings can only be understood in the context of the periodic adjustments from the base rent. And § 45–2516(e) is abundantly clear on the subject of adjustments: "No petition may be filed with respect to any rent adjustment ... more than 3 years after the effective date of the adjustment."

The tenants' position would permit them to accomplish indirectly what the statute expressly prohibits by direct action. Furthermore, it ignores the Commission's logical and not unreasonable reading of the purpose underlying the 1985 enactment of § 45–2516(e): to simplify rent control litigation by confining the inquiry to the three year period immediately preceding the commencement of a ten-

---

**6.** Petitioners point out that there are various types of tenant challenges under the statute. Tenant petitions may be filed as to base rent, 14 DCMR § 4214.1 (1991), rent ceiling adjustments, § 4214.2, rent adjustments, § 4214.3, a particu-

lar rent level, § 4214.3, or any other violation of the Act, § 4214.4, yet the limitations provisions of both the Act and the regulations refer only to "adjustments." D.C.Code § 45–2516(e); 14 DCMR § 4214.8.

ant action, thus relieving the agency of the onerous administrative burdens imposed under pre-existing law. As to the practical effect of the Commission's construction of § 45–2516(e), that provision, as with any other statute of limitations provision, places a burden on the party seeking relief to be vigilant in the protection of its own interests; that party must bring its action in a timely fashion or run the risk of forfeiting the opportunity to obtain redress.

In sum, we are satisfied that the Commission's view of § 45–2516(e), and its application to rent ceilings, is consistent, well-established, and reasonable. Because petitioners did not file a timely challenge to the June 1986 rent ceiling adjustment, their present action is foreclosed.

*Affirmed.*