**MAJERLE MANAGEMENT, INC., Petitioner,**

v.

**DISTRICT OF COLUMBIA RENTAL HOUSING COMMISSION, Respondent.**

**No. 99–AA–863.**

District of Columbia Court of Appeals.

Argued Jan. 4, 2001.
Decided March 15, 2001.

---

Morris R. Battino, Washington, DC, for petitioner.

Sheila Kaplan, Assistant Corporation Counsel, with whom Robert R. Rigsby, Corporation Counsel, and Charles L. Reischel, Deputy Corporation Counsel, were on the brief, for respondent.

Before TERRY and REID, Associate Judges, and KING, Senior Judge.

KING, Senior Judge:

This petition for review arises from the Rental Housing Commission's ("RHC") adjudication of a tenant's complaint against her housing provider, Majerle Management Inc. ("Majerle"), for asserted rent overcharges and diminution in services and facilities. Although Majerle raises a number of challenges, only two merit extensive discussion: (1) whether the lawful rent ceiling for the tenant was the amount established by the last perfected rent ceiling filing or the unauthorized amount of rent collected before the date reached by the three-year statute of limitations; (2) whether an award for diminution in ser-

vices and facilities may compensate the tenant for damages occurring not only within the three years prior up to the filing of her complaint, but also through the date of the rehearing.

We conclude, with respect to the first issue, that the rent *ceiling,* rather than the rent *charged,* governs. We do not decide the services compensation issue for the reasons stated. Therefore, we remand the case to the RHC for further proceedings on the services compensation issue, but affirm on all other issues.

## I.

In the mid 1970s, Bertha Redman ("tenant") first became a tenant in the five-unit apartment building at 4301 Halley Terrace, Southeast. Nearly a decade later, in December 1986, William and Mary Bailey purchased the property as tenants by the entirety and continued to make the units available for rent. On December 22, 1987, as is required by the Rental Housing Act of 1985 ("Act"),[1] Mr. Bailey filed an amended registration statement for the property, which was defective in several respects.[2] The amended registration form stated that the tenant's rent ceiling and monthly rent had been increased from $218 per month[3] to $228 on September 1, 1987. The tenant paid $228 in rent until November 1, 1988, when the rent was again increased and the tenant began paying $239.

On September 1, 1989, Majerle increased the tenant's rent to $250, which the tenant paid. As with the increase of the preceding year, there was no filing with the Rent Administrator requesting authorization for the rent increase. Also during 1989, the roof above the tenant's apartment began to leak, which caused damage to her ceiling.

Near the end of 1989, Mr. Bailey died; his wife assumed full ownership of the property and, soon thereafter, hired Majerle to manage the property. Mrs. Bailey filed two further amended registration forms; one in March 1990, and one in July 1991. The July 1991 filing requested a 4.6% rent increase; it was the only filing, other than the 1987 filing, seeking a rent ceiling increase. Also during July 1991, the tenant's rent was decreased from $250 to $240.

On September 22, 1992, the tenant filed a complaint with the Rental Accommodations and Conversion Division ("RACD") against "Majerle Management Inc./For Mary Bailey and the Estate of William Bailey." In her petition, the tenant alleged, *inter alia,* that the rent she was being charged exceeded the lawful rent ceiling and that the services and facilities derived from the apartment had been substantially reduced due to several housing code violations, in particular the leaking roof and damaged ceiling.

After a hearing and appeals process spanning nearly seven years, the RHC-the appellate body for the RACD—issued a final decision in June 1999. The RHC awarded the tenant damages, which it trebled, for rent overcharges[4] and damages

---

1. D.C.Code §§ 45–2501 to 2594 (1996 & Supp.2000). Under the Act, housing providers are required to file an amended registration statement with the Rent Administrator within thirty days of "any event which changes or substantially affects the rents ..., services, facilities, or the housing provider or management of any rental unit in a registered housing accommodation." D.C.Code § 45–2515(g). The property was originally registered by the owner from whom Mr. and Mrs. Bailey purchased the property.

2. The most significant deficiency in the amended registration was its filing eleven

months after the statutorily imposed deadline. *See* D.C.Code § 45–2515(g). Additional defects included: a discrepancy in the number of rental units covered; the failure to reflect the concurrent ownership in the property by Mrs. Bailey; and the lack of supporting documentation for the specified rent increase.

3. Unless otherwise stated, hereinafter all rental fees are on a per month basis.

4. The RHC awarded the tenant $1,150.66 in rental overcharges, trebled to $3,451.98, plus interest in the amount of $1,442.42, for a total of $4,894.40.

for the diminution in value of services and facilities, caused by the leaking roof and other housing code violations.[5] The recovery for the diminution in services and facilities was awarded through the date of the RACD rehearing of the tenant's complaint, *i.e.,* March 1996. In addition, both awards included interest through the date of the RHC's decision. Finally, the RHC also imposed two fines against Majerle: a $500 fine for failing to register under the Act and a $1,000 fine for retaliation against the tenant. Majerle filed a timely petition for review of the RHC's decision.

## II.

 In reviewing an administrative decision such as the one under review here, this court examines, among other things, whether the findings and conclusions are "[a]rbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "[u]nsupported by substantial evidence in the record of the proceedings." D.C.Code § 1–1510(a)(3)(A) & (E) (1999); *see also Washington Times v. District of Columbia Dep't of Employment Servs.,* 724 A.2d 1212, 1216 (D.C.1999). The scope of our review of the decision is limited, and we will affirm where: (1) the agency's decision states findings of fact on each material, contested issue; (2) those findings are based on substantial evidence; and (3) the conclusions of law flow rationally from the findings. *See Washington Times, supra,* 724 A.2d at 1216 (quoting *Perkins v. District of Columbia Dep't of Employment Servs.,* 482 A.2d 401, 402 (D.C.1984) (citations omitted)).

## III.

 We first address Majerle's challenge to the RHC's determination that the

tenant was charged in excess of the lawful rent ceiling. In reaching its decision, the RHC ruled that the lawful rent ceiling was $228—the amount established by the 1987 filing—and that the tenant was therefore entitled to a refund because she had been charged in excess of that amount. The RHC reasoned that the $228 ceiling was the last ceiling imposed before September 22, 1989 (three years prior to the filing of the complaint), and that because the statute of limitations had run, it could not be challenged by the tenant.

Majerle, relying upon our holding in *Kennedy v. District of Columbia Rental Hous. Comm'n,* 709 A.2d 94 (D.C.1998), contends that the tenant's rent ceiling was $250, *i.e.,* the last amount *charged* before September 22, 1989. It argues that the applicable statute of limitations contained in section 2516(e) of the Act[6] bars a challenge to any rent adjustment (even if the adjustment exceeds the then-existing rent ceiling) made more than three years before the complaint is filed. Thus, so the argument goes, the three-year statute of limitations precludes the tenant's September 22, 1992, challenge to the rent adjustment to $250 made on September 1, 1989 (three years and twenty-one days earlier). In short, Majerle argues that under *Kennedy* the statute of limitations creates a *de facto* rent ceiling equal to the rent actually charged on the date three years before the tenant filed her complaint. Because, it is contended, the amount actually charged was $250, that amount becomes the rent ceiling even though the most recent rent ceiling, which was established by the 1987 filing, was $228. Majerle misreads our holding in *Kennedy.*

---

5. The RHC's refund for the reduction in services and facilities amounted to $7,125.31 ($5,092.60 for the diminution in services and facilities plus interest in the amount of $2,032.71).

6. D.C.Code § 45–2516(e) states in pertinent part:

> A tenant may challenge a rent adjustment implemented under any section of this chapter by filing a petition with the Rent Administrator under § 45–2526. No petition may be filed with respect to any rent adjustment under any section of this chapter, more than 3 years after the effective date of the adjustment....

The section makes one exception which is not relevant to our discussion in this case.

In *Kennedy*, the court considered whether the RHC properly rejected a 1994 complaint by tenants alleging that they had been overcharged from the time their rent ceiling was erroneously calculated eight years earlier. *See* 709 A.2d at 95. In June 1986, the housing provider in *Kennedy* filed a certificate of Election of Adjustment of General Applicability that reported an erroneously high rent ceiling due to a miscalculation in applying the consumer price index to the ceiling.[7] Rent adjustments filed in subsequent years, which were themselves proper, were calculated using the erroneous 1986 figure. In affirming the RHC's ruling, we concluded that a challenge to the filing made eight years earlier was precisely what section 2516(e) was designed to preclude. *See* 709 A.2d at 99. Because the individual adjustments made in 1991–94 (less than three years prior to the filing of the complaint) were themselves proper, notwithstanding the error made in the 1986 filing, we held that the tenants' challenge to the rent ceilings predicated on the asserted eight year-old adjustment was properly rejected. *See id.*

One need look no further than the RHC's decision in this case to see the proper application of the holding in *Kennedy* and its interplay with section 2516(e). The tenant argued before the RHC that the lawful rent ceiling was $218, the amount established before the 1987 filing (which increased the rent ceiling to $228) because the 1987 filing was defective. Relying on *Kennedy*, the RHC held that the three-year statute of limitations barred an inquiry into the correctness of the 1987

rent ceiling filing.[8] Because a challenge by the tenant to the 1987 filing was barred by the three-year limitations period, the rent ceiling of $228 established in that filing was a lawful rent ceiling, even though, as the RHC noted, the filing was in fact defective.

The question we must now answer is whether either a subsequent rent ceiling filing[9] or a subsequent rent adjustment superseded the rent ceiling established by the 1987 filing. With respect to the latter, Majerle contends that the rent adjustment made on September 1, 1989, increasing the rent to $250, is not subject to challenge because it was imposed beyond the period established by the statute of limitations. Therefore, Majerle contends that amount constitutes the lawful rent ceiling. We disagree.

*Kennedy* and section 2516(e) do not preclude a challenge to a rent adjustment (as opposed to a rent ceiling filing) made more than three years before a complaint is filed, where the adjustment was made in excess of the lawful rent ceiling and without a filing. *See Kennedy*, 709 A.2d at 98 (approving *Ayers v. Landow*, TP 21,273 (RHC Oct. 4, 1990), which held the lawful rent ceiling was established by a 1982 filing even though the tenant's complaint was filed in 1988). "The propriety of a particular rent charged by a housing provider can *only* be judged against the allowable rent ceiling, a figure defined in terms of the sum of the base rent and all subsequent *authorized* adjustments." *Kennedy*, 709 A.2d at 99 (emphasis added). A rent charged in excess of the allowable rent ceiling and without authorization is im-

---

7. *See Kennedy*, 709 A.2d at 95–96 n. 2; *see also* D.C.Code § 45–2516(b); 14 DCMR § 4204.10 (1991).

8. That portion of the RHC's ruling is not challenged here.

9. Only one rent ceiling filing (in 1991) was made after the 1987 filing. Because the challenge to that filing was not barred by the statute of limitations, the RHC ruled that the filing was defective for several reasons includ-

ing: the absence of a proper registration of the property; the absence of a certificate of ownership or housing business license in the name of Ms. Bailey; and a discrepancy concerning the number of rental units in the property. In sum, the RHC ruled that the 1991 filing could not have established a lawful rent ceiling since it was susceptible to challenge and was in fact defective. That ruling is not challenged by Majerle in this court.

proper regardless of when it was initially collected. Since such an improper and unlawful adjustment cannot be said to have been "implemented under any section of [the Act]," the statute of limitations does not protect the housing provider's attempt to create a *de facto* ceiling by charging an amount of rent in excess of the lawful ceiling. D.C.Code § 45–2516(e). To hold otherwise would run counter to the mandate of section 2516(a) of the Act: "[N]o housing provider of any rental unit subject to [the Act] may charge or collect rent for the rental unit in excess of the amount ... *authorized* ... for the rental unit by [the Act]." D.C.Code § 45–2516(a) (emphasis added).

■ The tenant, therefore, was not prohibited from raising a challenge to the propriety of the September 1, 1989, adjustment, even though it was implemented more than three years prior to the filing of the complaint. The RHC correctly found that the 1989 adjustment was unlawful since it exceeded the rent ceiling and had not been authorized by a filing with the

Rent Administrator. *See* D.C.Code § 45–2516(a). The unauthorized adjustment did not, indeed could not, have superseded the rent ceiling established by the earlier 1987 filing. Thus, the RHC correctly ruled that neither the 1991 filing [10] nor the 1989 adjustment superseded the $228 rent ceiling established by the 1987 filing.

■ Once the lawful rent ceiling ($228) was determined, the RHC calculated the tenant's refund by subtracting the amount of the lawful rent ceiling from the rent actually paid each month for the three-year period.[11] Because Majerle does not object to this calculation, we affirm the RHC's award to the tenant for overcharges.[12]

## IV.

■ Next we consider Majerle's challenge to the award for the diminution in services and facilities. Specifically, Majerle contends that an award may only compensate for damages suffered within the three years immediately preceding the filing of the tenant's complaint.[13] Here the

---

**10.** *See supra* note 9.

**11.** The RHC also correctly ruled that section 2516(e) barred the tenant from recovering any rent, which exceeded the lawful rent ceiling, paid more than three years before the filing of her complaint. Therefore, the tenant's claim for a refund for excess rent paid prior to September 1989 was barred. As the *Kennedy* court stated, "[section 2516(e),] as with any other statute of limitations provision, places a burden on the party seeking relief to be vigilant in the protection of its own interests; that party must bring its action in a timely fashion or run the risk of forfeiting the opportunity to obtain redress." 709 A.2d at 100.

**12.** We also reject Majerle's claim that the RHC abused its discretion by trebling the damages and imposing interest on the award through the date of its decision. First, the RHC had discretion to treble the damages awarded for rent overcharging. D.C.Code § 45–2591(a); *see also* 14 DCMR § 4217.1(b) (1991). We cannot say that it has abused its discretion here where it relied upon the following circumstances: Majerle was aware that the lawful rent ceiling was not $250 (even if it thought it was $240 instead of

$228) yet overcharged the tenant; Majerle imposed late fees in excess of the amount agreed upon in the lease and imposed those fees even when the rent was not overdue; and Majerle failed to repair housing code violations as discussed in Part IV, *infra*. *See Jerome Mgmt. v. District of Columbia Rental Hous. Comm'n*, 682 A.2d 178, 185–86 (D.C. 1996).

Second, we have previously held that interest may be awarded from the time the damages are incurred until the time of the award. *See Marshall v. District of Columbia Rental Hous. Comm'n*, 533 A.2d 1271, 1278 (D.C. 1987). Indeed, the municipal regulations were amended in 1998 to specifically allow the RHC to award interest on refunds through the date of its decision. *See* 45 D.C.Reg. 684, 686–87 (1998) (amending Title 14 of the District of Columbia Municipal Regulations to include section 3826). We are satisfied that there was no abuse of discretion in imposing interest for the same reasons relied upon by the RHC in its decision trebling damages. *See Jerome Mgmt., supra* note 12, 682 A.2d at 186.

**13.** Majerle's remaining arguments relating to the award for diminution in services and facilities can be resolved summarily. First, Ma-

RHC awarded damages for the diminution in services and facilities incurred from September 22, 1989 (three years before the filing of the complaint) through September 22, 1992 (the date the tenant filed her complaint), but also extended the award to compensate for the damages suffered through the date of the RACD rehearing.

Majerle contends that the tenant cannot recover for the diminution in services and facilities through the date of the RACD rehearing because Majerle could not have been expected to defend against such an inquiry. In support it cites *Menor v. Weinbaum,* TP 22,769 (RHC Aug. 4, 1993), a decision by the RHC, which held that "if the filing of the petition were not the cut off point for the issues to be adjudicated, the landlord would never know what was to be defended [against]." *Id.* at 3 n. 6.

The Corporation Counsel, on behalf of the RHC, urges that the RHC should be permitted to award damages for a reduction in services and facilities through the date of the rehearing just as it may award interest for the same period. Whatever the merits of that argument, we will not decide it until the RHC has had the opportunity to directly consider and decide it.

■ In allowing recovery to the date of the rehearing, the RHC neither cited any statutory or regulatory authority in support nor distinguished *Menor,* or otherwise explained why the holding in that case should not govern here. We, therefore, remand the case to the RHC for a statement of reasons and the legal principles underlying its decision, including the rationale in favor of, or opposed to, the rule it set forth in *Menor.*[14]

jerle's argument that the statute of limitations completely bars recovery is unavailing. Though the housing code violations may have initially occurred more than three years before the tenant filed her complaint, the statute of limitations does not bar recovery for violations that continued past the cut-off date established by the statute of limitations. As with the rent refund, the statute of limitations will only bar the recovery of damages suffered prior to September 1989. *See supra* note 11.

Second, contrary to Majerle's argument, the record includes ample evidence of the existence, duration, and severity of several housing code violations and their effect upon the housing unit. Among the evidence contained in the record are two housing deficiency notices, from 1991 and 1992, for which fines were imposed. There was no evidence that those violations were ever remedied. Additionally, the tenant presented a housing inspector who testified to the extent of the damages to the tenant's apartment. More importantly, the manager of the property, a witness called by Majerle, acknowledged that the roof in the tenant's apartment had been leaking since 1989, but that the property owner had been unable, due to economic reasons, to repair it until 1995. Finally, the property manager also testified that, as of the date of the second RACD hearing, the damage to the tenant's ceiling still had not been repaired. These findings by the RHC, among others, support the reduction in rent for the diminution in services and facilities.

Finally, Majerle argues, as it did with the award for overcharging, that the RHC abused

its discretion by awarding interest through the date of its decision. We reject the argument for the same reasons explained above. *See supra* note 12.

14. Finally, we find the remaining contentions raised by Majerle to be without merit. Majerle argues that the RHC abused its discretion by imposing a $500 fine for failing to properly register the property. While normally the housing provider should be notified by the Rent Administrator of any defects in the registration documents, *see* 14 DCMR § 4104 (1991), in this particular case Majerle was in a better position to know of the defects, notably the change in ownership of the property and the discrepancy in the number of rental units. The imposition of the fine, therefore, was not an abuse of discretion. *See* D.C.Code § 45–2591(b); *see also Revithes v. District of Columbia Rental Hous. Comm'n,* 536 A.2d 1007, 1022 (D.C.1987).

The second fine imposed by the RHC was for retaliation by Majerle against the tenant. Majerle filed a suit in the Superior Court within six months after the tenant challenged the rent ceiling, and brought a second legal action within three months of the tenant's request for a refund. Such acts are presumptively retaliatory under section 2552(a) of the Act, *see De Szunyogh v. William C. Smith & Co.,* 604 A.2d 1, 4 (D.C.1992), and Majerle bore the burden of producing clear and convincing evidence to rebut the presumption, D.C.Code § 45–2552(b). Majerle has produced no evidence to rebut this presumption

## V.

In conclusion, we affirm the RHC's ruling that a housing provider is liable for the excess rent charged above the lawful rent ceiling, even if the housing provider began collecting the unlawful rent more than three years before the tenant filed a complaint seeking a refund. The award for the diminution in services and facilities is affirmed except to the extent that it includes damages incurred after the tenant filed her complaint. With respect to that issue, we remand the case to the RHC for further consideration as set forth in this opinion.

*So ordered.*

and, therefore, we affirm that portion of the

order imposing a fine for retaliation.