*Notice:  This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters.  Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

## Nos. 13-AA-613, 13-AA-959 & 13-AA-960

UNITED DOMINION MANAGEMENT COMPANY, PETITIONER,

V.

DISTRICT OF COLUMBIA RENTAL HOUSING COMMISSION, RESPONDENT,

and

BRIAN HINMAN, INTERVENOR.

Petitions for Review of the District of Columbia Rental Housing Commission
(RH-TP-06-28728; RH-TP-06-28707; RH-TP-06-28749)

(Argued June 10, 2014                           Decided October 16, 2014)

*Vincent Mark J. Policy*, with whom *Richard W. Luchs* was on the brief, for petitioner and for *amicus curiae* Apartment and Office Building Association of Metropolitan Washington.

*James C. McKay, Jr.*, Senior Assistant Attorney General, with whom *Irvin B. Nathan*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General, and *Loren L. AliKhan*, Deputy Solicitor General, were on the brief, for respondent.

*John E. Logan* for intervenor.

Before GLICKMAN, EASTERLY, and MCLEESE, *Associate Judges*.

EASTERLY, *Associate Judge*:  In this consolidated appeal,[1] we address certain types of rent ceiling increases and when they may be challenged under the relevant statute of limitations.  Specifically, we are asked to apply the statute of limitations in the Rental Housing Act ("RHA"), which provides that "[n]o petition may be filed with respect to any rent adjustment . . . more than 3 years after the effective date of the adjustment," D.C. Code § 42-3502.06 (e) (2012 Repl.), to the following scenario:  (1) a landlord files the necessary amended registration form with the Rent Administrator for a claimed rent ceiling increase, but the form is filed late— that is, the landlord failed to properly "take and perfect" the rent ceiling increase as required by relevant regulations, *see* 14 DCMR §§ 4204.10 (c), 4207.5 (1986), (2) more than three years pass, (3) the landlord raises the rent pursuant to the improperly perfected rent ceiling increase, and (4) the tenants then, within three years, seek to challenge their rent increase pursuant to the improperly perfected rent ceiling increase.

---

[1]  United Dominion Management Company (United Dominion) challenges three separate decisions by the Rental Housing Commission ("RHC") in cases initiated by tenants Brian Hinman, Delores Jackson Kelly, and Tresa Rice.  The RHC defends all three decisions; only Mr. Hinman has filed a brief as an intervenor.

We uphold as a reasonable interpretation and application of D.C. Code § 42-3502.06 (e) the RHC's determination that, under these circumstances, an improperly perfected rent ceiling increase is not "effective" until it is implemented through a corresponding increase in rent charged, and thus the statute of limitations in this scenario begins to run from the date of the demanded rent increase. Even though rent ceilings have been abolished in the District, the resolution of this case may elucidate the proper application of the statute of limitations for other similar cases still pending before the RHC.

Of more general application, we clarify the proper standard of review that this court must apply to decisions of the RHC, and that the RHC must apply at the outset when it considers an appeal from the determination of an Office of Administrative Hearings (OAH) Administrative Law Judge (ALJ).

## I. Facts

United Dominion manages an apartment building located at 907 Sixth Street, Southwest. In the summer of 2006, United Dominion sent notices to tenants Brian Hinman, Delores Jackson Kelly, and Tresa Rice—all tenants in separate units—

alerting them to scheduled increases in their rent. The notices attributed the rent increase to rent ceiling adjustments (otherwise known as vacancy adjustments) filed pursuant to Section 213 (a)(2) of the Rental Housing Act of 1985,[2] *see* D.C. Code § 42-3502.13 (2001). This provision allows a landlord to raise the rent ceiling for a registered property within a specific window of time, 30 days, after the property becomes vacant. *See* 14 DCMR §§ 4204.10, 4207.5 (explaining that a rent ceiling adjustment shall be considered "taken and perfected" when filed within 30 days of a vacancy); *see also Sawyer Prop. Mgmt. of Maryland, Inc. v. District of Columbia Rental Hous. Comm'n*, 877 A.2d 96, 109-10 (D.C. 2005) (explaining that in order to raise a rent ceiling based on a vacancy, the housing provider must file an amended registration form "within thirty days of the rental unit becoming vacant"). But in each case, the landlord had untimely filed the amended registration form claiming the rent ceiling increase.[3]

---

[2] In 2006, the Council of the District of Columbia enacted the Rent Control Reform Amendment Act [RCRAA] of 2006, D.C. Law 16-145, 53 D.C. Reg. 4889 (2006). This law abolished rent ceilings in the District of Columbia, but it does not apply to rent ceiling adjustments prior to August 5, 2006. *See* D.C. Code § 42-3502.06 (a). Because the filing of the rent ceiling adjustments as well as the corresponding rent increases in this case predated the RCRAA, the parties agree that the now-superseded law applies, and we analyze the pre-2006 Amendments version of the RHA in this opinion.

[3] In Ms. Kelly's case, the vacancy that precipitated the rent ceiling increase began on November 30, 1995, and the Amended Registration form was filed on January 17, 1996, 48 days later. In Ms. Rice's case, the vacancy began on July 1,

(continued…)

Shortly after receiving notice of the increases in their rent, Mr. Hinman, Ms. Rice, and Ms. Kelly each filed tenant petitions with the OAH in which they argued, *inter alia*, that their rent increases were ineffective because each was based on an improperly perfected rent ceiling increase. An OAH ALJ heard their petitions in the winter of 2007. At each hearing (and, in the Hinman and Kelly cases, in memoranda subsequently filed with OAH), United Dominion took the position that the tenants' claims were barred by the statute of limitations in D.C. Code § 42-3502.06 (e) because the tenants had not sought to challenge the rent ceiling increase within three years of the filing of the (concededly untimely) amended registration form claiming the rent ceiling increase. In October 2007, an OAH ALJ rejected United Dominion's argument and ruled in Mr. Hinman's favor. Other OAH ALJs followed suit in Ms. Rice and Ms. Kelly's cases in the spring of 2008, citing the ALJ's Order in Mr. Hinman's case.

United Dominion appealed these orders to the RHC and the RHC held a hearing in each case in 2008. More than five years later, the RHC affirmed the

(…continued)

2000 and the form was filed on August 29, 2000, 59 days later. In Mr. Hinman's case, the vacancy began on March 1, 2001 and the form was filed on April 19, 2001, 49 days later. Had these forms been timely filed, it would not have mattered that years elapsed between these adjustments and the 2006 rent increases seeking to invoke them, as D.C. Code § 42-3502.08 (h)(2) (2001) provided that a housing provider may "delay[] the implementation of any rent ceiling adjustment."

ALJ's decision in Mr. Hinman's case. Analyzing the statute of limitations issue in depth, the RHC concluded that (1) an untimely amended registration form claiming a rent ceiling increase is considered improperly "taken and perfected" and does not trigger the statute of limitations; (2) under these circumstances, the increase in the rent ceiling is not "effective" for purposes of § 42-3502.06 (e) until it is implemented through a corresponding increase in rent charged. The RHC also rejected United Dominion's secondary argument that allowing these challenges to rent ceiling increases claimed years earlier would constitute an unconstitutional deprivation of United Dominion's property and violate due process.

The RHC decided the Rice and Kelly matters soon thereafter, and in each adopted its reasoning from Mr. Hinman's case. United Dominion then filed petitions for review of all three RHC orders in this court.

## II. Standard of Review

The parties disagree about this court's standard of review for the RHC's decisions, and we discern confusion on the part of the RHC regarding its standard of review for the OAH ALJ's decisions in these cases. Accordingly, we elucidate the appropriate standard of review at all levels relevant to this proceeding.

This court will not disturb RHC's factual findings unless they are unsupported by substantial evidence in the record. *See Loney v. District of Columbia Rental Hous. Comm'n*, 11 A.3d 753, 755-56 (D.C. 2010). We also give "considerable deference to the RHC's interpretation of the statutes it administers and the regulations it promulgates"; we will "sustain the RHC's interpretation of those statutes and regulations unless it is unreasonable or embodies a material misconception of the law, even if a different interpretation also may be supportable." *Sawyer*, 877 A.2d at 102-03 (internal quotation marks omitted). We are the final arbiter of the meaning of our case law, *see Nunnally v. District of Columbia Metro. Police Dep't*, 80 A.3d 1004, 1012-13 n.20 (D.C. 2013), but to the extent that the RHC has used our case law to assist it in interpreting ambiguities in the RHA and implementing regulations, we continue to defer to the RHC in its exercise of statutory interpretation. Thus we reject United Dominion's argument that this court should give no deference to the RHC's interpretation of the RHA and its implementing regulations.

We agree with United Dominion, however, that the RHC erred when it stated that its review of the OAH ALJ was similarly deferential, although we ultimately determine that this error was inconsequential. In its decision and order

affirming the ALJ's decision in Mr. Hinman's case, the RHC stated that it would "sustain an ALJ's interpretation of the [Rental Housing] Act unless it is unreasonable or embodies a material misconception of the law, even if a different interpretation may also be supportable" and that it would "defer to an ALJ's decision so long as it flows rationally from the facts and is supported by substantial evidence." As support for this deferential standard of review, the RHC cited to case law from this court and 14 DCMR § 3807.1 (1986). Neither provides support for the RHC's articulation of its standard of review of the OAH ALJ's order.

Looking to the decisions from this court cited by the RHC, none discuss the RHC's standard of review as an agency; rather they reflect this court's standard of judicial review when reviewing agency decisions, which is generally controlled by the District of Columbia Administrative Procedure Act, D.C. Code § 2-510 *et seq.* (2012 Repl.).

The standard of review set forth in 14 DCMR § 3807.1 does pertain to the RHC—but it hails from a different era of adjudicating rental housing matters, and does not pertain to the RHC review of the decisions of an OAH ALJ. The regulation provides that, with respect to legal determinations, the RHC "shall reverse final decisions of the *Rent Administrator* [of the Department of Consumer

and Regulatory Affairs] which the Commission finds to be based upon arbitrary action, capricious action, or an abuse of discretion, or which contain conclusions of law not in accordance with the provisions of the [Rental Housing] Act . . . ." 14 DCMR § 3807.1 (emphasis added).  Prior to the establishment of OAH in 2006, the Rent Administrator was the entity that adjudicated tenant petitions under the RHA.  *See* D.C. Code § 42-3502.04 (c) (2001); *see also* D.C. Code § 2-1831.03 (b-1)(1) (2012 Repl.).  Now, the RHC reviews orders of OAH ALJs adjudicating tenant petitions under the Rental Housing Act.[4]  *See* D.C. Code § 2-1831.16 (b) (2012 Repl.).

Although OAH assumed the adjudicatory duties of the Rent Administrator, it is not appropriate for it to stand in the Rent Administrator's shoes.  Unlike the Rent Administrator, the OAH is not a specialized agency actor with expertise on a particular subject.  As we have previously explained, "the OAH is vested with the responsibility for deciding administrative appeals involving a substantial number of different agencies."  *Williams v. District of Columbia Dep't of Pub. Works*, 65

---

[4]  It appears that the regulations related to the operation of RHC have not been updated since the OAH was created and responsibility for adjudicating tenant petitions was transferred to its ALJs.  For that matter, we note also that none of the regulations implementing the Rental Housing Act have been updated since the Rent Control Reform Amendment Act of 2006, which substantially overhauled much of the Act.

A.3d 100, 104 (D.C. 2013) (quoting *Washington v. District of Columbia Dep't of Pub. Works*, 954 A.2d 945, 948 (D.C. 2008)). Because the OAH is simply an all-purpose adjudicatory body, without a particular subject-matter focus, its legal interpretations do not command deference. *Id.*

Although the RHC articulated its standard of agency review incorrectly, we decline to reverse on this ground, as we find that RHC's error was ultimately immaterial. *See* D.C. Code § 2-510 (b) ("The Court may invoke the rule of prejudicial error."); *see also LCP, Inc. v. District of Columbia Alcoholic Beverage Control Bd.*, 499 A.2d 897, 903 (D.C. 1985) ("[R]eversal and remand is required only if substantial doubt exists whether the agency would have made the same ultimate finding with the error removed." (quoting *Arthur v. District of Columbia Nurses' Examining Bd.*, 459 A.2d 141, 146 (D.C. 1983))). Although the RHC said that it would defer to reasonable legal interpretations of the OAH ALJ, its orders demonstrate that it did not do so. The RHC painstakingly analyzed "the plain language of the [Rental Housing] Act, the Act's legislative history, the Act's regulations, case law precedent, and the purposes of the Act" before announcing its conclusion. Indeed, given the thorough nature of the RHC's decision and order affirming the ALJ's decision, it is apparent that the RHC's decision amounted to a *de novo* review of the legal issues posed by Mr. Hinman's case (which it then

followed in Ms. Rice and Ms. Kelly's cases), even though the RHC did not

acknowledge it as such.[5]

## III. Analysis

In these cases, the RHC was called upon to apply its statute of limitations to

a factual scenario that exposed an ambiguity in the statute. As noted above, the

statute of limitations in the RHA provides that "[n]o petition may be filed with

respect to any rent adjustment[6] . . . more than 3 years after the *effective date of the*

*adjustment*," D.C. Code § 42-3502.06 (e) (emphasis added). But as the RHC

acknowledged, "effective date" is not statutorily defined and its meaning is not

clear on the face of the statute in a scenario such as this one, where a landlord did

---

[5] We also note that the ALJ's decision relied in large part on the RHC's prior decision in *Grant v. Gelman Mgmt. Co.*, No. TP 27,995, 2006 D.C. Rental Housing Comm. LEXIS 147 (RHC Mar. 30, 2006), and found that it was "substantively indistinguishable and controlling." The ALJ applied that case, which held that the statute of limitations does not bar a timely challenge to a rent increase based on an untimely filed rent ceiling adjustment, to reach his decision. Thus, the RHC's affirmance of this view, even if supposedly deferential to the ALJ's view of the law, simply reflects an affirmance of its own interpretation of the law.

[6] United Dominion also argued before the RHC and this court that its rent ceiling increases in this case must be considered to be qualifying "rent adjustments" under the statute. Because we resolve this case on the basis of the RHC's reasonable interpretation of "effective date," not "rent adjustment," we need not address this issue.

not file an amended registration form to report a rent ceiling increase based on vacancy within the requisite thirty-day period. The RHC settled on an interpretation and application of D.C. Code § 42-3502.06 (e) that we determine is reasonable: Under the circumstances presented, the effective date of the improperly perfected rent ceiling adjustment is not, as United Dominion argues, the date of a landlord files the amended registration form belatedly claiming the rent ceiling adjustment, but instead, the date on which a landlord issues a notice to the tenant that it is increasing the rent charged based on the earlier improperly perfected rent ceiling adjustment so long as the tenant files his petition challenging the increase within three years of that notice.

The RHC considered a variety of authorities in arriving at this conclusion. In particular, the RHC considered its own prior decision in *Grant*, 2006 D.C. Rental Housing Comm. LEXIS 147, which in turn interpreted this court's decision in *Sawyer*, 877 A.2d at 103. In *Sawyer*, this court affirmed a decision by the RHC disallowing an increase in rent charged based on a rent ceiling increase where the landlord had not timely filed the amended registration form claiming the rent increase within 30 days as required by the applicable regulations. *Id.* We determined that "[t]he RHC reasonably construed its regulations to require a housing provider to file for [a] rent ceiling adjustment within thirty days after it

first becomes eligible for it"; and we further endorsed the RHC's conclusion that "[a] housing provider that fails to meet this thirty-day deadline . . . forfeits its right to the adjustment." *Id.* at 100. *Sawyer* did not present a statute of limitations issue, but when confronted with such an issue in *Grant*, the RHC relied on *Sawyer* to determine that a rent ceiling increase that has not been properly "taken or perfected" does not trigger the RHA's statute of limitations. 2006 D.C. Rental Housing Comm. LEXIS 147.

We further note that in addition to considering the "language of the Act, the Act's regulations, and the applicable case precedent," the RHC considered the purposes of the RHA to "balance the economic interests of housing providers and tenants in the context of adjustments in rent ceiling and rent charged respectively, by assuring that any adjustments are authorized by and in full compliance with the Act." The RHC determined its interpretation of D.C. Code § 42-3502.06 (e) advanced this goal because:

> [a] housing provider is thus not provided an opportunity to secure windfall increases in rent charged simply because the housing provider delays the implementation of an adjustment in [the] rent ceiling for more than three years when such an adjustment in [the] rent ceiling may not have properly been taken and perfected – intentionally or otherwise – in full compliance with the Act. On the other hand, a tenant is prevented from avoiding or impairing a housing provider's entitlement to increases in rent charged which are

authorized by the Act in the form of corresponding rent ceilings taken and perfected in compliance with the Act.

United Dominion does not contest that the plain language of the RHA's statute of limitations is ambiguous. Instead we understand it to argue that the RHC should have adopted its interpretation of "effective date" as referring to the filing of the amended registration form (without regard to the fact that it was filed past the 30-day deadline), and that the RHC's failure to do so "embodies a material misconception of the law." *Sawyer*, 877 A.2d at 102-03 (internal quotation marks omitted). Specifically, United Dominion argues that our decisions in *Kennedy v. District of Columbia Rental Hous. Comm'n*, 709 A.2d 94 (D.C. 1998), and *Majerle Mgmt., Inc. v. District of Columbia Rental Hous. Comm'n*, 866 A.2d 41 (D.C. 2004), are controlling and require resolution of this case in its favor. We disagree and conclude that the RHC reasonably distinguished these cases.

In *Kennedy*, tenants sought to challenge rent increases based on improper rent ceiling adjustments. Critically different from this case, however, at the time the tenants filed their petitions in *Kennedy*, more than three years had elapsed since the landlord had increased the rent charged based on the allegedly improper rent ceiling adjustments. 709 A.2d at 95-96. Thus as the RHC explained, *Kennedy* did not answer the question presented in this case because the challenged rent ceiling

adjustment would have been barred either way—whether one accepted the landlord's interpretation of the "effective date" in the statute of limitations as the filing date for the rent ceiling increase or as the date on which a landlord issues notices to the tenants that it is increasing the rent charged based on the earlier improperly perfected rent ceiling adjustment.

For its part, *Majerle* presented a "unique factual scenario," 866 A.2d at 51, which the RHC likewise determined was distinguishable from this case. In *Majerle*, as in *Kennedy*, the tenant also filed a petition more than three years after the landlord increased the rent charged based on a challenged rent ceiling adjustment, but this court determined that the housing provider's admission that the rent ceiling level was improper precluded application of the statute of limitations to the tenant petition at issue. *See* 866 A.2d at 42-43, 48-51. United Dominion highlights that one of the alleged deficiencies in the rent ceiling adjustment in *Majerle* was the failure to timely file an amended registration form noting the adjustment. *See* 866 A.2d at 42 n.2. But just as in *Kennedy,* the court did not address the issue presented in this case, because the tenant had failed to file a petition challenging the rent ceiling increase within three years of the filing of the amended registration form *or* the increase in rent charged. In short, because they

did not address a factually analogous scenario, neither *Kennedy* nor *Majerle* contradict or preclude the RHC's decision in these cases.[7]

For the foregoing reasons, the orders of the Rental Housing Commission are

*Affirmed.*

---

[7] United Dominion separately challenges the RHC's decisions on constitutional grounds, arguing that, where a statute of limitations operates to entirely extinguish liability for challenges raised beyond the period it provides, a government actor cannot, consistent with due process, remove the limitation and reinstate the potential for liability. But we reject United Dominion's premise. The decision of the RHC simply determined when the "effective date" of the challenged rent ceiling adjustment occurred for the purpose of the statute of limitations and concluded that the limitations period had not expired at the time the tenant petitions in this case were filed. This conclusion does not "repeal" the statute of limitations or lengthen its limitations period. *Cf. William Danzer & Co. v. Gulf & S.I.R. Co.*, 268 U.S. 633, 636 (1925). Rather, the RHC held that the statute of limitations, while fully applicable and unchanged by government action, simply did not operate to bar the claims.