**Mark S. MILLER, Petitioner,**

v.

**DISTRICT OF COLUMBIA RENTAL HOUSING COMMISSION, Respondent.**

No. 04–AA–282.

District of Columbia Court of Appeals.

Argued March 2, 2005.
Decided March 24, 2005.

Mark S. Miller, pro se.

Stacy L. Anderson, Assistant Attorney General, with whom Robert J. Spagnoletti, Attorney General for the District of Columbia, and Edward E. Schwab, Deputy Attorney General, were on the brief, for respondent.

Before SCHWELB, FARRELL, and WASHINGTON, Associate Judges.

FARRELL, Associate Judge:

The District of Columbia Rental Housing Commission (RHC or the Commission) upheld a finding of statutory retaliation by a housing provider against tenant-petitioner Mark S. Miller.[1] *See* D.C.Code § 42–3505.02 (2001). The RHC went on, however, to vacate a fine of $2,090 which the Administrative Law Judge (ALJ) had imposed as a sanction because, in the RHC's view, the ALJ had "failed to make findings of fact or conclusions of law on whether the housing provider acted willfully as is required by the [fine provision] of the [Rental Housing] Act." Miller now petitions for review of that decision, contending that the RHC erred in concluding that the statutory adverb "willfully"—denoting

---

1. The finding was based on evidence that, less than six months after petitioner joined a tenant organization, the housing provider for the first time sought to enforce against him a lease provision forbidding possession of dogs, even though the housing provider had known for nearly four years that petitioner had a dog.

the mental state necessary to permit imposition of a fine—requires proof and related findings beyond what the ALJ found in determining that the housing provider had engaged in retaliation.

This court has previously rejected that argument, at least in dictum; and, in any event, the RHC's interpretation of "willfully" as requiring more than the "knowing" conduct sufficient to constitute a violation of the Act (here retaliation) is a reasonable one that we sustain. There is, however, a problem with the RHC's disposition. The Commission did not determine—certainly not on the face of its opinion—that no substantial evidence would have supported a conclusion of "willful" conduct by the housing provider. It held only that the ALJ had not made findings directed to that issue and, therefore, to the propriety of imposing a fine. Absent a holding by the RHC that no conclusion of willfulness could be made as a matter of law on this record, the proper course for it was not to strike the fine *simpliciter* but rather to return the case to the ALJ for findings of fact related to that issue.[2] We accordingly vacate the portion of the RHC's decision striking the fine and remand the case to it for further proceedings.

## I.

The housing provider has not cross-petitioned, and thus the correctness of the finding of statutory retaliation is not before us. The only issue is whether the RHC exceeded its authority in vacating the fine ordered by the ALJ. Petitioner argues that the RHC erred in requiring findings of culpability by the housing provider beyond that implicit in the prohibited act of retaliation. This argument is unsupported by the fine provision itself and our decisions interpreting it.

D.C.Code § 42–3509.01 provides penalties for violations of the Rental Housing Act depending on the nature of the violation but also on the state of mind of the wrongdoer. Thus, § 42–3509.01(a) subjects a person who "knowingly" commits certain violations having to do with rent charges or provision of services to the penalty of return of excess rent (which may be trebled) or a roll back of rent charged. In *Quality Mgmt., Inc. v. District of Columbia Rental Hous. Comm'n,* 505 A.2d 73 (D.C.1986), this court sustained as reasonable the RHC's interpretation of "knowingly" in that section to mean "only a knowledge of the essential facts bringing [the person's] conduct within the reach of [the penalty provision]." *Id.* at 75. Because "the law presumes knowledge of the legal consequences arising from performance of the prohibited conduct," the section does not require "actual knowledge of the unlawfulness of the [prohibited] act or omission." *Id.*; *see also Webb v. District of Columbia Rental Hous. Comm'n,* 505 A.2d 467, 469–70 (D.C.1986). This interpretation of "knowingly," we added in *Quality Mgmt.,* is further supported by the need "to draw some independent meaning from the word 'willfully' as used in another context in [§ 42–2509.01(b)]." *Id.* (footnote omitted).

The referenced § 42–3509.01(b), in turn, subjects to the imposition of a fine of up to $5,000 anyone who "willfully" commits specified acts or "(3) . . . any other act in violation of any provision of this chapter," including by inference retaliation under § 42–3505.02. In *Quality Mgmt., supra,* we took note of subsection (b) by comparison, stating that "[f]rom the context it is

2. This court is handicapped in its review by the failure of petitioner to provide us with the transcript of the evidentiary hearing before the ALJ. *See Cobb v. Standard Drug Co.,* 453 A.2d 110, 111 (D.C.1982).

clear that the word 'willfully' as used in [§ 42–3509.01(b)] demands a more culpable mental state than the word 'knowingly' as used in [§ 42–3509.01(a)]." 505 A.2d at 75 n. 6. We quoted from exchanges in the legislative history suggesting that the "more culpable mental state" was an " 'inten[tion] to violate the law.' " *Id.* (citation omitted). Although the RHC's understanding of the term "willfully" was not at issue in *Quality Mgmt.*, the RHC—both before and after that decision—has interpreted the adverb, as used in the fine provision, to mean that the housing provider intended to violate the Act or at least knew that it was doing so, from which the intent to do so could be inferred. *See Ratner Mgmt. Co. v. Tenants of Shipley Park,* TP 11,613 (RHC Nov. 4, 1988); *RECAP v. Powell,* TP 27,042 (RHC Dec. 19, 2002). Our discussion of the issue in *Quality Mgmt.*, though probably dictum, confirms this meaning of the term.

■■■ To eliminate any uncertainty, we now uphold as reasonable RHC's understanding that a fine may be imposed under § 42–3509.01(b) only where the housing provider intended to violate or was aware that it was violating a provision of the Rental Housing Act. This interpretation, as we said in *Quality Mgmt.*, provides "independent meaning" for "willfully," namely, the "more culpable mental state" that the term viewed in context implies. We further reject petitioner's argument that this heightened culpability—what petitioner characterizes as "malice"—is shown any time a housing provider has been found liable for retaliation under the statute. Section 42–3505.02(b) creates a presumption of retaliation from conduct by a housing provider that takes place within six months after a tenant has done certain acts—for example, as in this case, joining a tenant organization. *See* § 42–3505.02(b)(4). That presumption ripens

automatically into a conclusion of retaliation unless the housing provider rebuts the presumption by clear and convincing evidence. The RHC concluded that the failure alone of a housing provider to rebut the presumption of retaliation does not establish the heightened culpability necessary to support imposition of a fine. Rather, in its view, before a fine may be imposed the ALJ must make specific findings that the retaliation, like any violation, was committed with intent to violate the Act or at least with awareness that this will be the outcome. That reading of the statute is entirely reasonable.

## II.

■■■ The RHC was also correct that the ALJ did not make the necessary findings in this case. True, the ALJ recited the requirement of § 42–3509.01(b) that a violation must be shown to be willful before a fine may be imposed, but nothing in his order suggests that he took into account the definitional distinction between "knowing" and "willful" acts. The RHC thus acted properly in requiring findings directed to the meaning of "willfully" before a fine could be imposed. But where the RHC itself erred, we think, was in vacating the fine unconditionally without further proceedings before the ALJ. As stated earlier, the Commission did not hold that the record would not support a conclusion of willfulness; the error it identified in the ALJ's order was the failure to make findings of fact—regarding the housing provider's intent or knowledge—essential to that determination. Unless the Commission was of the view—not apparent from its opinion—that such findings could lead to only one conclusion on the record, *viz.,* non-willfulness, the proper course for it was to remand the case to the ALJ for the necessary findings of fact.

Accordingly, we reverse the decision of the RHC to the extent that it vacates the fine *simpliciter,* and remand the case to the Commission for further proceedings not inconsistent with this opinion.

*So ordered.*

SCHWELB, Associate Judge, concurring:

I concur in the judgment and agree with most of the court's opinion, but I have two brief comments:

1. In the next-to-last sentence of the opinion, the court seems to contemplate the possibility—no more than a possibility—that, on remand, the Commission's findings "would lead to only one conclusion on the record, *viz,* non-willfulness," and that in these circumstances a remand to the ALJ would not be necessary. I suppose that this possibility theoretically exists, especially in the absence of a transcript of the evidentiary hearing. Nevertheless, absent extraordinary circumstances, a finding that Borger (the housing provider) allowed Miller to have a dog when he was not a member of a tenant organization, but told him to get rid of the dog after he joined the organization, would surely at least permit a reasonable inference that Borger's retaliatory action was willful. In my view, it would, in most circumstances, be contrary to common sense to conclude that such a sequence of events *must have been* coincidental or otherwise not willful. If (1) Borger, a major landlord, really did not know that it was against the law to condition Mr. Miller's right to have a dog on not joining a tenant organization, if (2) Borger adduced testimony to that effect, if (3) the trier of fact believed that testimony, and if (4) there was no contrary evidence—an extraordinarily improbable scenario—then perhaps a finding of non-willfulness would perhaps be mandated.[1] Short of a situation as extreme as that, however, I am satisfied that an inference of willfulness would be at least permissible.[2]

2. Mr. Miller has asked the court to reinstitute a fine against Borger which the RHC has set aside. The fine would go to the public coffers, not to Mr. Miller. The question that naturally comes to mind in this situation is whether Mr. Miller has suffered "injury in fact" sufficient to give him standing to challenge the RHC's action. This issue is complicated by the reality that, so far as I can discern, nobody other than Mr. Miller would have standing to complain. This would present an interesting question for a law school examination, but we need not reach it here because the RHC has not challenged Mr. Miller's standing in this court.

---

1. Borger has not participated in the proceedings in this court, and no one has suggested that the evidence before the ALJ showed anything like the scenario described in the text preceding this footnote. The RHC may, of course, direct the ALJ to take further evidence.

2. I am basing my conclusion on an apparently undisputed sequence of events; perhaps it will assist the ALJ and the RHC to make the finding required by the remand. In its opinion, the court does not assert that Mr. Miller has waived the right to argue on remand along the lines described in this concurrence, and I therefore do not address any question of waiver.