*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 15-AA-1169

DAVID G. WILSON, PETITIONER,

FILED 05/18/2017
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

v.

DISTRICT OF COLUMBIA RENTAL HOUSING COMMISSION, RESPONDENT,

and

SMITH PROPERTY HOLDINGS VAN NESS, L.P. &
ARCHSTONE-SMITH COMMUNITIES, LLC, INTERVENORS.

On Petition for Review of an Order
of the District of Columbia
Rental Housing Commission
(RH-TP-07-28,907)

(Submitted February 14, 2017                      Decided May 18, 2017)

David G. Wilson, *pro se.*

*Karl A. Racine*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General, and *Loren L. AliKhan*, Deputy Solicitor General, filed a statement in lieu of brief in support of intervenor.

*Roger D. Luchs* was on the brief for intervenors.

Before THOMPSON and BECKWITH, *Associate Judges*, and PRYOR, *Senior Judge*.

THOMPSON, *Associate Judge*: Petitioner David G. Wilson challenges two decisions by the District of Columbia Rental Housing Commission ("RHC") in which the RHC upheld determinations by an Administrative Law Judge ("ALJ") of the Office of Administrative Hearings ("OAH"). The ALJ rejected petitioner's claims (1) that his housing provider's offer to continue his rent for the twelve-month period beginning October 2, 2004, at the same monthly rate he had theretofore paid as a holdover month-to-month tenant if he signed a new twelve-month lease — which offer petitioner accepted — constituted a rent increase, which the housing provider effected without complying with statutory and regulatory notice and filing requirements; and (2) that the housing provider's offer of that and other lease options that made it financially disadvantageous for petitioner to remain in his rental unit as a month-to-month tenant was retaliatory and coercive conduct, in violation of D.C. Code § 42-3505.02 (2003 Supp.). For the reasons explained below, we affirm the RHC's rulings.

**I.**

Petitioner leased an apartment unit (unit S1006) located at 3003 Van Ness Street, N.W., from intervenors Smith Property Holdings Van Ness LP and Archstone-Smith Communities LLC (the "Housing Provider") for a term starting

on June 24, 2002, and ending on June 30, 2003. The leased unit was rent-controlled under the Rental Housing Act of 1985 (the "Act"), which, at that time, permitted a landlord to increase the rent charged for a housing accommodation up to the amount of the specific rent ceiling for that accommodation. *See* D.C. Code § 42-3502.06 (a) (2003 Supp.).

On July 1, 2003, after his lease ended, and without executing a new lease, petitioner remained on the property as a hold-over, month-to-month tenant, paying the same rent ($1303 per month) as under his prior lease. On August 4, 2004, over a year after the month-to-month tenancy began, the Housing Provider sent petitioner a letter providing him twelve leasing options should he wish to remain in the rental unit. One option allowed petitioner to remain a month-to-month tenant but increased his rent from $1303 to $1755 per month. Another option allowed petitioner to sign a twelve-month lease at a continued monthly rent of $1303. The other options involved lease terms between two and eleven months, with rent increases inversely proportional to the length of the lease. No option in the letter increased petitioner's rent to an amount above the rent ceiling, which at that time was $2411. According to the letter, the option petitioner chose would become effective on October 1, 2004. The letter also stated that if the housing provider

received no response from petitioner by August 23, 2004, his tenancy would remain month-to-month at the increased rate of $1755, effective October 1, 2004.

Petitioner chose to sign a twelve-month lease at a monthly rent of $1303. However, on March 6, 2007, he filed a Tenant Petition raising two principal claims: First, petitioner alleged that his new twelve-month lease afforded the Housing Provider a benefit over and above the cash rental amount, in the form of "a guaranteed future cash flow for that [twelve]-month period." Petitioner contended that this additional "benefit" to the Housing Provider constituted a "rent increase" and, therefore, triggered notice and filing requirements (including notice about the justification for the rent increase, a summary of tenant rights, and a list of sources of technical assistance for tenants).[1] Petitioner contended that because the Housing Provider had not complied with those requirements, petitioner was "entitled to a refund of $452[2] for each of the [twelve] months that the violation

---

[1]  *See* D.C. Code §§ 42-3502.08 (f) ("Any notice of an adjustment [a rent increase under a rent ceiling] . . . shall contain a statement of the . . . justification for the rent increase.") and 42-3509.04 (b) (30-day notice requirement for rent increase).

[2]  This amount represents the difference between the $1755 per month rent the Housing Provider requested for a continued month-to-month tenancy and the $1303 per month rent under the new twelve-month lease. Petitioner argued in the Tenant Petition that it is logical to assume that "the value of the option taken by Tenant, a new lease with new provisions and a 12-month term, is of equal value to

(continued…)

continued . . . plus treble damages for the bad faith exhibited by the Housing Provider's threats . . . ." Second, petitioner alleged that "[t]he Housing Provider "engaged in retaliatory action when it coerced [him] into accepting a term lease and abandoning his month-to-month lease."

On January 7, 2011, the OAH ALJ dismissed the Tenant Petition with prejudice, finding that "[a] discount in the amount of legal rent charged in return for a lease is not illegal," that "[t]he notice and filing requirements were not necessary," and that the "tenant [was not] coerced into 'abandoning a month-to-month tenancy.'" Petitioner appealed to the RHC, which, in a March 10, 2015, Decision and Order, affirmed the ALJ's decision except with respect to the retaliation claim. The RHC remanded as to that claim, concluding that "the ALJ failed to address the legal requirements of a claim of retaliation under the Act[] and [to] make factual findings and provide conclusions of law with respect to the merits of the Tenant's claim . . . ." On remand, the ALJ again rejected petitioner's retaliation claim, finding that "[o]ffering a lease option was a decision Housing Provider made independent of any action on part of [petitioner] or any tenant [and, therefore,] was not retaliatory." In a September 25, 2015, Decision and Order, the

---

(…continued)
the Housing Provider as the $452 per month increase offered if Tenant were to keep his old lease on a month-to-month basis."

RHC affirmed the ALJ's determination on remand. Petitioner now seeks review of the RHC rulings.

## II.

This court will affirm an agency decision unless the ruling is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law. *See Panutat, LLC v. District of Columbia Alcoholic Beverage Control Bd*., 75 A.3d 269, 272 (D.C. 2013). "Normally, an agency rule would be arbitrary and capricious if the agency has relied on factors which [the legislature] has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co*., 463 U.S. 29, 43 (1983). This court "owe[s] considerable deference to the RHC's interpretation of the statutes it administers and the regulations it promulgates." *Sawyer Prop. Mgmt. of Maryland, Inc. v. District of Columbia Rental Hous. Comm'n*, 877 A.2d 96, 102 (D.C. 2005). "We are obliged to sustain the RHC's interpretation of those statutes and regulations unless it is unreasonable or embodies 'a material misconception of the law,' even if a different

interpretation also may be supportable." *Id.* at 102–03 (quoting *Jerome Mgmt., Inc. v. District of Columbia Rental Hous. Comm'n*, 682 A.2d 178, 182 (D.C. 1996)). "[T]o persuade us to reject the Commission's construction . . . , the [challenging party] must show that it is plainly wrong or incompatible with the statutory purpose." *Sawyer Prop. Mgmt.*, 877 A.2d at 103 (quoting *Winchester Van Buren Tenants Ass'n v. District of Columbia Rental Hous. Comm'n*, 550 A.2d 51, 55 (D.C. 1988)); *see also United States v. Shimer*, 367 U.S. 374, 382-83 (1961) (stating that the court "should not disturb" an agency's policy choice "unless it appears from the statute or its legislative history that the accommodation is not one that [the legislature] would have sanctioned"); *Money v. Office of Pers. Mgmt.*, 811 F.2d 1474, 1477 (Fed. Cir. 1987) ("The longstanding interpretation placed on a statute by the agency charged with its administration should be followed unless there are compelling indications that it is wrong." (citing *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 843–44 (1984))).

**III**.

We turn first to petitioner's argument that the RHC erred in rejecting his argument that the twelve-month lease the Housing Provider required as a condition of the $1303 monthly rent payment was a guaranteed-cash-flow benefit that

constituted an additional rent amount that the provider could not lawfully charge without compliance with the statutory notice and filing requirements. We disagree because we conclude that the RHC's determination that such benefit was not the type of benefit cognizable as "rent" under the Act was consistent with the understanding of the term "rent" in previous court and RHC decisions and is not manifestly "wrong or incompatible with the statutory purpose." *Sawyer Prop. Mgmt.*, 877 A.2d at 103 (internal quotation marks omitted).

The Act defines "[r]ent" as "the entire amount of money, *money's worth*, *benefit*, bonus, or gratuity demanded, received, or charged by a housing provider as a condition of occupancy or use of a rental unit, its related services, and its related facilities." D.C. Code § 42-3501.03 (28) (2003 Supp.) (emphasis added). Nothing in the statute or implementing regulations explicitly addresses whether "rent" includes within its scope the types of benefits (such as what petitioner has referred to as "bankable" cash-flow, and as reduction of "constant turnover" in an apartment building) that may accrue to a housing provider from a twelve-month lease. In analyzing petitioner's claim, however, the RHC relied on the "typical[]," "limited" meaning of the term as utilized in a decision of this court and previous RHC decisions, all of which referred to the term "rent" as including money, goods,

or services.[3]  Specifically, the RHC reasoned that "the meaning of 'benefit' within the Act's definition of 'rent' [is] limited to situations where a tenant provides a service or a good other than money to a housing provider related to the housing accommodation in lieu of payment of monetary rent or any discount on such rent." Accordingly, the RHC concluded that "the twelve-month lease term was not a

---

[3]  *See Revithes v. District of Columbia Rental Hous. Comm'n*, 536 A.2d 1007, 1017 n.25 (D.C. 1987) ("A relative . . . who pays 'rent' of some form[ ]—[ ]money, goods, or services[ ]— [ ]would appear to occupy a unit that is 'offered for rent'. . . ."); *Marguerite Corsetti Trust v. Segreti*, TP 28,207, 2012 D.C. Rental Housing Comm. LEXIS 48 (RHC Sept. 18, 2012) (reasoning that a property owner's grandson was her tenant because he paid her money and provided her services that constituted rent); *Kornblum v. Zegfye*, TP 24,338, 1999 D.C. Rental Housing Comm. LEXIS 269 (RHC Aug. 19, 1999) (finding that the services rendered by a relative in exchange for living in the unit constituted rent); *Worthington v. Sipper*, TP 21,118, 1990 D.C. Rental Housing Comm. LEXIS 318 (RHC Mar. 23, 1990) (recognizing that rent was paid in the form of lifeguard duties performed).

We note that in *United Dominion Mgmt. Co. v. District of Columbia Rental Hous. Comm'n*, this court held that it was error for the RHC to defer to the OAH "[b]ecause the OAH is simply an all-purpose adjudicatory body, without a particular subject-matter focus . . . ." 101 A.3d 426, 430–31 (D.C. 2014).  In this case, it is clear from the RHC's citation to these cases that it analyzed the issue *de novo* rather than by deferring to the OAH ALJ's analysis.  Thus, although the RHC incorrectly stated its standard for reviewing OAH decisions as one requiring "defer[ence] to a hearing examiner's decision so long as it flows rationally from the facts and is supported by substantial evidence," we are satisfied that the misstatement was harmless error.  *See id.* (reasoning that the RHC's erroneous articulation of the applicable standard of review was inconsequential because the agency's decision demonstrated it had not actually deferred to the OAH's decision).

'benefit' within the Act's definition of 'rent'" and that petitioner's "rent" "did not increase when [he] selected the twelve-month lease option . . . ."

Petitioner states that he "has no dispute with [the] decision[s] cited by the [RHC]" but argues that those decisions do not address his claim, which "is one of first impression." He contends that the agency's interpretation is incorrect because "the Housing Act . . . nowhere limits the meaning of the word 'benefit' to goods or services." Petitioner is correct that neither the language of the Act nor the precedent on which the RHC relied forecloses his argument that providing financial stability to a housing provider by entering into a twelve-month lease constitutes a "benefit" and thus rent (an argument that petitioner asserts relies on "very elementary business economics"). However, for an RHC determination to be entitled to deference by this court, it need not be the only permissible interpretation allowed by the statute the agency is "charged with administering." *Snowden v. Benning Heights Coop., Inc.*, 557 A.2d 151, 156 (D.C. 1989). Rather, "even if a different interpretation also may be supportable," the determination of the agency, as the expert entity, prevails unless it is "plainly wrong or inconsistent" with the legislature's intent, *McCulloch v. District of Columbia Rental Hous. Comm'n*, 584 A.2d 1244, 1248 (D.C. 1991), or incompatible with the purpose of the Act, *Sawyer Prop. Mgmt.*, 877 A.2d at 103.

Petitioner has not shown, and we are unable to discern, how the RHC's conclusion that petitioner's "rent" did not increase when he selected the twelve-month lease option (and thereby continued to pay the rent he had been paying for over a year) is incompatible with the Act's purpose "'to protect low- and moderate-income tenants from the erosion of their income from increased housing costs,'" *Slaby v. District of Columbia Rental Hous. Comm'n*, 685 A.2d 1166, 1167 (D.C. 1996) (quoting D.C. Code § 45-2505 (1) (1996) (current version at D.C. Code § 42-3501.02 (1) (2012 Repl.))), or with the other purposes identified in § 42-3501.02. Accordingly, for us to uphold the RHC decision on the "rent" issue, it is enough that the RHC's decision was not arbitrary or capricious. It was not, because the RHC neither relied on a factor the legislature intended it not to consider, nor failed to consider an important aspect of the problem, nor offered an explanation for its decision that runs counter to the evidence that was before it,[4]

---

[4] Regarding petitioner's argument that "the Housing Provider benefited from the twelve-month lease because it could use it to demonstrate proof of future income to a bank to secure a loan[,]" the RHC stated that its "review of the record reveals no evidentiary support for [petitioner's] mere speculation regarding the Housing Provider's future use of the income stream from the term lease as collateral for bank or other financing."

nor adopted an interpretation that is implausible.[5] *See Motor Vehicle Mfrs.*, 463 U.S. at 43.

Because we affirm the RHC's conclusion that there was no rent increase, we likewise affirm its conclusion that the Housing Provider's announcement of the twelve-month lease option did not trigger the filing and notice requirements. Accordingly, the Housing Provider had no obligation to inform the petitioner of "any justification or legal authority" for its alleged rent increase and no obligation to furnish "a list of sources of technical assistance."

**IV**.

Petitioner next contends that the RHC erred in rejecting his claim that "[t]he Housing Provider engaged in retaliatory action when it coerced [him] into accepting a term lease and abandoning his month-to-month lease." He asserts that

---

[5] Quite the contrary, the RHC's interpretation avoids complications for administering the Act that might arise from the broader interpretation of the term "rent" that petitioner urges. As the intervenors argued before the RHC, petitioner's approach "takes no account whatsoever of the benefit he received from his rent being locked in at its then current level for a full year. Using his own logic, that would have resulted in monetary benefit to him, thereby resulting in a 'real' rent lower than his leasehold rent and a corresponding monetary detriment to [the housing provider]."

the Housing Provider sent him the lease-options letter in retaliation for his exercising his right to remain on the property as a month-to-month tenant, and that the Housing Provider coerced him into accepting a twelve-month lease by increasing the price of his month-to-month lease from its then-current level of $1303 to $1755 per month.

D.C. Code § 42-3505.02 prohibits a housing provider from taking retaliatory action against a tenant for exercise of a right conferred by law. The Act provides a list of actions that may constitute retaliatory action, including "any . . . form of threat or coercion." D.C. Code § 42-3505.02 (a); 14 DCMR § 4303.3. Unless, "within the 6 months preceding the [alleged] housing provider[] action," the tenant has taken one of six actions enumerated by the statute, the tenant has the burden of proving retaliatory conduct.[6] D.C. Code §§ 2-509 (b) (2003 Supp.) and 42-

---

[6] The six tenant actions triggering a presumption of retaliation are:

(1) Has made a witnessed oral or written request to the housing provider to make repairs which are necessary to bring the housing accommodation or the rental unit into compliance with the housing regulations; (2) Contacted appropriate officials of the District government . . . concerning existing violations of the housing regulations in the rental unit the tenant occupies or pertaining to the housing accommodation in which the rental unit is located, or reported to the officials suspected violations which, if confirmed, would render the rental unit or

(continued…)

> housing accommodation in noncompliance with the housing regulations; (3) Legally withheld all or part of the tenant's rent after having given a reasonable notice to the housing provider, either orally in the presence of a witness or in writing, of a violation of the housing regulations; (4) Organized, been a member of, or been involved in any lawful activities pertaining to a tenant organization; (5) Made an effort to secure or enforce any of the tenant's rights under the tenant's lease or contract with the housing provider; or (6) Brought legal action against the housing provider.

D.C. Code § 42-3505.02 (b)(1)–(6). It appears that every case of retaliation that this court has entertained involves a landlord's repossession of property, failure to repair a fixture, monetary or service-related increase of rent, or the enforcement of previously unenforced lease provisions in response to a tenant's filing of a complaint, participation in a tenants' association, or initiation of a legal suit against the landlord. *See Bridges v. Clark*, 59 A.3d 978, 978 (D.C. 2013) (filing a complaint); *Gomez v. Indep. Mgmt. of Delaware, Inc.*, 967 A.2d 1276, 1289 (D.C. 2009) (membership in a tenants' association); *Parreco v. District of Columbia Rental Hous. Comm'n*, 885 A.2d 327, 329 (D.C. 2005) (complaining about conditions); *Borger Mgmt., Inc. v. Sindram*, 886 A.2d 52, 57 (D.C. 2005) (filing a complaint alleging housing code violations); *Miller v. District of Columbia Rental Hous. Comm'n*, 870 A.2d 556, 560 (D.C. 2005) (Schwelb, J., concurring) (membership in a tenants' association); *Majerle Mgmt., Inc. v. District of Columbia Rental Hous. Comm'n*, 768 A.2d 1003, 1009 n.14 (D.C. 2001), *rev'd in part en banc*, 777 A.2d 785 (D.C. 2001) (challenge to the rental ceiling and request for a refund); *Youssef v. United Mgmt. Co.*, 683 A.2d 152, 153 (D.C. 1996) (membership in a tenants' association); *Twyman v. Johnson*, 655 A.2d 850, 851 (D.C. 1995) (filing complaints regarding the conditions of the housing accommodation); *Espenschied v. Mallick*, 633 A.2d 388, 390 (D.C. 1993) (rent increase in response to the tenant's filing complaints and aid to other tenants in filing complaints); *De Szunyogh v. William C. Smith & Co.*, 604 A.2d 1, 4 (D.C. 1992) (landlord's suit for possession in response to tenant's "complaints about the uninhabitable conditions of her apartment"); *Habib v. Thurston*, 517 A.2d 1, 4, 9 (D.C. 1985) (complaints about "unsafe or unsanitary conditions").

3505.02 (b). When no presumption of retaliation applies, the agency looks to determine whether there was an "action intentionally taken against a tenant by a housing provider to injure or get back at the tenant for having exercised rights protected by . . . the Act." 14 DCMR § 4303.1.

The RHC began its analysis of the retaliation/coercion issues in this case by noting petitioner's concession that he was not entitled to a presumption of retaliation (a premise petitioner has not challenged and that we accept). The RHC then found that no substantial evidence undermined or contradicted the ALJ's finding that there was no connection between (1) petitioner's "continued exercise of his month-to-month tenancy" and (2) the housing provider's mailing of the lease-options letter on August 4, 2004 (i.e., a year and a month after petitioner began his month-to-month tenancy). The RHC noted "the absence of any, even arguable, temporal connection between the two actions . . . ."

The RHC did not err in upholding the ALJ's finding that there was no "substantial evidence to support the Tenant's contention that the Housing Provider's action in presenting the Tenant with the Lease Option Letter was intended to injure or get back at the Tenant for his exercise of a right, namely, the continued exercise of his month-to-month tenancy." Indeed, petitioner recognizes

that the Housing Provider's timing in sending the lease-options letter in August (of 2004) suggests that the Housing Provider "conduct[s] its business of raising rents and changing lease terms on a yearly basis, generally beginning on October 1 of the year." That does not, of course, explain why the Housing Provider sent no such letter in August of *2003*, after petitioner's original lease had expired, but it does support the RHC's and the ALJ's conclusions about a lack of temporal relationship between petitioner's decision to exercise his right to remain in his unit as a month-to-month tenant and the Housing Provider's offer of financial incentives for petitioner to sign a new lease.

Regarding petitioner's claim of coercion, the RHC reasoned — correctly — that "even if [petitioner] had proven that the Lease Option Letter were coercive . . ., [his] retaliation claim would still fail because [he] did not prove that the Housing provider's action in presenting . . . the Lease Option Letter was intended to injure or get back at [petitioner] for his exercise of a right, i.e., the month-to-month tenancy." The RHC nevertheless went on to explain why it rejected petitioner's claim that the rent the Housing Provider demanded for petitioner's continued tenancy without a lease could not, in any event, be deemed coercive. The RHC noted petitioner's reliance on a statement in this court's opinion in *Double H Hous. Corp. v. David*, 947 A.2d 38 (D.C. 2008). We stated in

that case, in *dictum*, that we could "imagine a disparity between (i) the monthly rent charged to a tenant who continues residence as a month-to-month tenant and (ii) the monthly rent charged upon execution of a new lease, that is so large that the tenant is effectively forced to sign a new lease" and is thereby denied "a meaningful opportunity to remain as a month-to-month tenant." *Id.* at 42. The RHC reasoned that petitioner's reliance on that remark in *Double H* was misplaced, because the housing accommodation involved there was "exempt from the rent stabilization provisions of the Act" (and thus potentially subject to unfettered rent increases). By contrast, the RHC emphasized, petitioner's rental unit was "subject to . . . the Act's procedural and substantive requirements for rent increases . . . ." The RHC reasoned that, absent evidence that the rents described in the lease-options letter (including the $1755 monthly rent the housing provider demanded for a continued month-to-month tenancy beginning October 1, 2004) violated the rent ceilings then in effect, petitioner had failed to show that they were "not authorized by the Act." Thus, "despite the amount," the RHC implied, the rents described in the lease-options letter could not be deemed unlawfully coercive within the meaning of D.C. Code § 42-3505.02 (a). We are satisfied that the RHC's analysis on this issue was neither "unreasonable" nor "a material misconception of the law." *Sawyer Prop. Mgmt.*, 877 A.2d at 102–03 (internal quotation marks omitted); *see also, e.g.*, *Wahl v. Watkis*, 491 A.2d 477, 480 (D.C.

1985) ("The retaliation statute is applicable only where a landlord takes an action not otherwise permitted by law.").

## V.

For the foregoing reasons, the March 10, 2015, Decision and Order and the September 25, 2015, Decision and Order of the RHC are

*Affirmed.*