*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 20-AA-525

DISTRICT OF COLUMBIA DEPARTMENT OF CORRECTIONS, et al., PETITIONERS,

v.

DISTRICT OF COLUMBIA DEPARTMENT OF EMPLOYMENT SERVICES, RESPONDENT,

and

ALMA ATKINS, INTERVENOR.

Petition for Review of an Order of the
District of Columbia Compensation Review Board
(CRB-33-20)

(Argued February 16, 2022                    Decided September 1, 2022)

*Lucy E. Pittman*, with whom *Karl A. Racine*, Attorney General for the District of Columbia, *Loren L. AliKhan*, Solicitor General at the time the brief was filed, *Caroline S. Van Zile*, Principal Deputy Solicitor General, and *Ashwin P. Phatak*, Deputy Solicitor General, were on the brief, for petitioners.

*Tonya A. Robinson*, General Counsel for the Department of Employment Services, filed a statement in lieu of brief.

*Harold L. Levi* for intervenor.

Before BLACKBURNE-RIGSBY, *Chief Judge*, MCLEESE, *Associate Judge*, and MCLEAN, *Associate Judge, Superior Court of the District of Columbia.*[*]

---

[*] Sitting by designation pursuant to D.C. Code § 11-707(a).

MCLEESE, *Associate Judge*: Petitioners, the Office of Risk Management (ORM) and the Department of Corrections, challenge an order of the Compensation Review Board (CRB) reinstating benefits that intervenor Alma Atkins had been receiving through the Public Sector Workers' Compensation Program. We affirm the order of the CRB.

**I.**

Unless otherwise noted, the following facts appear to be uncontested. Ms. Atkins was an employee of the Department of Corrections. After being injured while working, she began receiving temporary workers' compensation benefits in 1993. In 2018, ORM — which administers the Program — informed Ms. Atkins that her benefits were being terminated. The stated factual basis for the termination was an independent medical examination by Dr. Paul Griffiths, who concluded that Ms. Atkins's work-related injuries had reached maximum medical improvement, that in fact Ms. Atkins's work-related injuries had resolved, and that Ms. Atkins's current medical conditions were not work-related.

Ms. Atkins appealed to the Office of Administrative Hearings (OAH), where an Administrative Law Judge (ALJ) reversed the termination of benefits.

The ALJ analyzed Ms. Atkins's appeal under the following burden of proof:

> (1) The employer first has the burden of producing current and probative evidence that claimant's condition has sufficiently changed to warrant a modification or termination of benefits. If the employer fails to present this evidence then the claim fails and the injured worker's benefits continue unmodified or terminated. (2) If the employer meets its initial burden, then the claimant has the burden of producing reliable and relevant evidence that conditions have not changed to warrant a modification or termination of benefits. (3) If this burden is met, then the evidence is weighed to determine whether employer met its burden of proving by a preponderance of the evidence that claimant's benefits should be modified or terminated.

That burden of proof was approved by this court in *Ross v. D.C. Dep't of Emp. Servs.*, 125 A.3d 698, 701 (D.C. 2015).

The ALJ disagreed with ORM's contention that the ALJ was required instead to apply a new burden of proof specified in regulations promulgated by ORM in 2017. *See* 7 D.C.M.R. § 159.2 (if Program seeks to modify or terminate benefits, Program bears initial burden of presenting "substantial evidence that the Program had reason to believe" that modification or termination was warranted; burden then shifts to claimant to show by preponderance of evidence nature and extent of disability and that claimant is entitled to ongoing benefits). As the ALJ explained, the CRB had previously held that ORM's burden-of-proof regulation was invalid.

The ALJ concluded that ORM failed to carry its initial burden of proof under the applicable framework. The ALJ explained that Dr. Griffith's opinion that Ms. Atkins's disability was no longer causally connected to her 1993 injury was based on a single examination in 2018 and a limited review of Ms. Atkins's medical records. The ALJ therefore concluded that ORM had not produced "current and probative" evidence supporting termination of benefits. The ALJ further stated that even if ORM had met its initial burden, the ALJ would have accepted the evidence from Ms. Atkins and her treating physician over the opinion of Dr. Griffiths, and therefore would have found that a modification was not warranted. Finally, the ALJ declined to decide whether Ms. Atkins's injury had reached maximum medical improvement and therefore had become permanent rather than temporary. In the ALJ's view, that question was not relevant given that ORM had failed to carry its initial burden of proof. The CRB affirmed, agreeing with the ALJ's conclusions.

## II.

ORM first argues that if Ms. Atkins's disability has changed from temporary to permanent, that by itself warrants termination of Ms. Atkins's temporary benefits. Specifically, ORM argues that such a change permits modification of Ms. Atkins's benefits based on a "change of condition," because the temporary disability has

ceased, becoming instead a permanent disability (or perhaps no disability at all). *See* D.C. Code § 1-623.24(d)(1) ("The Mayor may modify an award of compensation if the Mayor or his or her designee has reason to believe a change of condition has occurred."), (d)(4)(A) (award may be modified if "disability for which compensation was paid has ceased or lessened"). A recent decision of this court, however, forecloses ORM's position. *See Frazier v. D.C. Dep't of Emp. Servs.*, 229 A.3d 131, 135-37 (D.C. 2020).

The claimant in *Frazier* had previously received temporary disability benefits, and then she sought a permanent schedule award. *Frazier*, 229 A.3d at 134-35; *see* D.C. Code § 1-623.07(a) (providing schedule of compensation to public-sector employees for work-related "permanent disability involving the loss, or loss of use, of a member or function of the body"). The court held that ORM rather than the OAH should decide that claim. *Frazier*, 229 A.3d at 139. As part of the reasoning supporting that holding, the court held that § 1-623.24(d)(1) was not applicable. *Id.* at 136. The court noted that "petitioner's claim for a permanent-disability schedule award is not a modification of awarded benefits because that statutory term refers to a reduction in or termination[] of benefits because of a change to the claimant's condition or to a[] corrective compensation decision where there is strong compelling evidence that the initial decision was in error." *Id.* at 136 (brackets,

citations, and internal quotation marks omitted).  The court further explained that § 1-623.24(d) applies to

> determination[s] that the claimant's disability has "ceased or lessened[,]" the "disabling condition is no longer causally related to the employment[,]" the "claimant's condition has changed from a total disability to a partial disability[,]" the "employee has been released to return to work[,]" or "the initial decision was in error."  As this case involves petitioner's request for a schedule award, the foregoing provisions are inapplicable.

*Id.* at 1367 n.5 (internal citation omitted; quoting D.C. Code § 1-623.24(d)(4)(A) (E)).

In sum, as we later explained, *Frazier* "compels" the conclusion that "a change in disability status from temporary to permanent does not constitute a change in condition pursuant to § 1-623.24(d)." *District of Columbia Pub. Schs. v. D.C. Dep't of Emp. Servs.*, 262 A.3d 213, 227 n.10 (D.C. 2021) (internal quotation marks omitted).

We express no view about what other provisions, if any, of the Program might permit modification or termination of temporary benefits solely on the ground that the underlying injury had reached maximum medical improvement and had thus become permanent.  Rather, we hold more narrowly — as we have previously held

— that D.C. Code § 1-623.24 does not permit modification or termination of benefits on that basis.

## III.

In the alternative, ORM points to its evidence that Ms. Atkins's disability had in fact ceased or lessened, in the sense that her work-related injuries had resolved. Such evidence, if credited, could be a basis for modifying or terminating benefits, under the plain language of § 1-623.24(d). The ALJ and the CRB, however, concluded that ORM had failed to adequately support that factual claim. ORM does not take issue with the factual analysis of the ALJ and the CRB. Rather, ORM raises a purely legal issue: that the ALJ and the CRB applied the wrong burden of proof. We uphold the ruling of the CRB.

Although "our review of legal rulings is de novo, we accord deference to an agency's reasonable interpretation of the statute it administers." *Frazier*, 229 A.3d at 139. To be considered reasonable, an agency's interpretation "must reflect the careful legal and policy analysis required in making choices among several competing statutory interpretations, each of which has substantial support[,] and the record must provide evidence that the agency considered the language, structure, or

purpose of the statute when selecting an interpretation." *Washington Hosp. Ctr. v. D.C. Dep't of Emp. Servs.*, 789 A.2d 1261, 1264 (D.C. 2002) (internal quotation marks omitted). An agency interpretation is not unreasonable simply because "a different interpretation also may be supportable." *Wilson v. D.C. Rental Hous. Comm'n*, 159 A.3d 1211, 1214 (D.C. 2017). An agency may change its interpretation of a statute "if it believes that a different interpretation is more consistent with the statutory language and legislative intent, but if it does so, it is obligated to provide an explanation of the change." *Hensley v. D.C. Dep't of Emp. Servs.*, 49 A.3d 1195, 1204-05 (D.C. 2012). This court will not affirm an agency rule that is "arbitrary, capricious, or an abuse of discretion." *Wilson*, 159 A.3d at 1214. An agency rule will normally be arbitrary and capricious if, among other things, the agency has "entirely failed to consider an important aspect of the problem." *Id.* (internal quotation marks omitted).

The parties disagree about whether we should defer to ORM or the CRB on the burden-of-proof issue. The parties also dispute whether ORM had authority to promulgate a regulation governing the burden of proof in modification proceedings before the OAH. We do not decide those questions. Even assuming that ORM had authority to promulgate the regulation and that we should defer to ORM's

interpretation of the workers' compensation statute, we conclude that ORM has not adequately explained the rationale for the burden of proof reflected in its regulation.

## A.

The burden of proof applied by the CRB "clarified the procedure to be followed when a District agency-employer has accepted a claim for workers' compensation and paid workers' compensation benefits, but later moves to terminate or modify those benefits." *Ross*, 125 A.3d at 700-01. We concluded in *Ross* that the CRB's burden-of-proof standard was a reasonable interpretation of the public-sector workers' compensation provisions. *Id.* at 701-03.

ORM subsequently promulgated a regulation specifying a different burden of proof in proceedings to modify benefits. 7 D.C.M.R. § 159.2. Under that regulation, if the Program seeks to modify benefits, the Program bears the initial burden of presenting "substantial evidence that the Program had reason to believe" that modification or termination was warranted. 7 D.C.M.R. § 159.2(a). If the Program carries that initial burden, the burden then shifts to the claimant to show by a preponderance of evidence both (1) the nature and extent of any disability and (2) that the claimant is entitled to ongoing benefits. 7 D.C.M.R. § 159.2(b).

In explaining its decision to adopt the regulation, ORM first stated that it was not bound to follow either the burden of proof established under federal workers' compensation law or the burden of proof generally applied under the District of Columbia Administrative Procedures Act. 64 D.C. Reg. 6330 (July 7, 2017). ORM then gave a single reason in favor of adopting the regulation: the District's public-sector workers' compensation statute contains a provision that "requires the Program to modify benefits where there is 'reason to believe' a change of condition has occurred." *Id.* (quoting D.C. Code § 1-623.24(d)).

As ORM acknowledged at oral argument, that stated reason is not accurate. Section 1-623.24(d) does not *require* the Program to modify benefits based on a reason to believe that modification is warranted; rather, § 1-623.24(d) *permits* such modification. *See* D.C. Code § 1-623.24(d)(1) ("The Mayor *may* modify an award of compensation if the Mayor or his or her designee has reason to believe a change of condition has occurred.") (emphasis added).

ORM's sole reason also is an inadequate justification for the regulation's allocation of the burden of proof. When approving the CRB's allocation of the burden of proof, this court stated that the public-sector workers' compensation statute "is silent on the burdens of production and persuasion where an agency-

employer seeks to terminate a claimant's workers' compensation benefits." *Ross*, 125 A.3d at 701. ORM agreed in this court that the statute is silent on the issue. It necessarily follows that the "reason to believe" language in § 1-623.24(d) does not by itself dictate the proper burden of proof.

In addition, ORM's explanation for the regulation is seriously incomplete. Other than to suggest that the principle was not binding, ORM did not address the "fundamental principle of administrative, statutory and case law that the burden of proof is on the proponent of the rule or order." *Ross*, 125 A.3d at 701 (internal quotation marks omitted). ORM also did not discuss its decision to establish a burden of proof different from that applicable to modifications of benefits under other workers' compensation statutes in the District, which place the ultimate burden of proof on the party seeking modification. *Id.* at 702 (noting that court generally construes District's workers' compensation statutes "to be consistent with each other, even where the statutes' language is not identical, in light of their similar humanitarian purpose").

Finally, ORM did not address the humanitarian purpose of workers' compensation statutes, including the public-sector workers' compensation statute. *Ross*, 125 A.3d at 702; *see generally, e.g.*, *Off. of Risk Mgmt. v. Jordan*, , 843 (D.C.

2020) ("[W]orkers' compensation provisions are typically given a liberal construction by the court to effectuate their humanitarian purposes.") (brackets and internal quotation marks omitted). Under § 159.2, ORM need only present substantial evidence of a reason to believe that modification is merited before the burden of proof shifts to the claimant, who is then required to show by a preponderance of the evidence entitlement to ongoing benefits. 7 D.C.M.R. § 159.2. Section 159.2 thus sets a relatively low threshold for ORM to shift the burden of proof to claimants, who must then meet a much higher standard of proof to keep receiving the benefits they previously were awarded. That approach fits rather uncomfortably with the humanitarian purpose of workers' compensation statutes.

In sum, we conclude that ORM's burden-of-proof regulation is invalid, because ORM promulgated the regulation based on an inaccurate statement of law and failed to address important factors bearing on the reasonableness of the regulation. We therefore uphold the decision of the CRB to instead apply the burden of proof approved by this court as reasonable in *Ross,* 125 A.3d at 701-03.

For the foregoing reasons, we affirm the order of the CRB.

*So ordered.*